39   899
47   340
48   491

STATE OF NEBRASKA, EX REL. JOHN H. HERSHEY,
v. JOHN H. CLARK, COUNTY TREASURER.

FILED APRIL 3, 1894.   No. 5977.

1. **Contract of Purchase of School Lands:** DEFAULT IN PAY-
MENT OF INTEREST: FORFEITURE: NOTICE. Before a contract
of purchase of school lands entered into with the state can be
declared forfeited, because of a default in the payment of an-
nual interest, notice to the delinquent purchaser of such pro-
posed cancellation must first be given by the commissioner of
public lands and buildings.

2. ———: ———: ———: NOTICE TO NON-RESIDENTS. In case
the purchaser is a resident of the state and his address is known,
such notice must be personally served upon him; but where he
is a non-resident, or his address is unknown, the notice may be
published in some newspaper published or of general circula-
tion in the county where the land is located.

3. *State v. Graham,* 21 Neb., 329, and *Richardson v. Doty,* 25 Neb.,
420, distinguished.

ORIGINAL application for *mandamus.*

*Frank T. Ransom,* for relator, cited: *Richardson v. Pratt,*
20 Neb., 196; *Richardson v. Doty,* 25 Neb., 420.

*George T. French, Thomas Darnall,* and *Grimes & Wil-
cox, contra,* cited: *State v. Eberhardt,* 14 Neb., 203; *State
v. Scott,* 17 Neb., 690; *People v. Martin,* 4 Neb., 54; *Mc-
Gee v. State,* 32 Neb., 149; *State v. Graham,* 21 Neb.,
354.

NORVAL, C. J.

On the 3d day of February, 1893, the relator, John H.
Hershey, applied to this court for a peremptory writ of
*mandamus* to compel the respondent, John H. Clark, as
county treasurer of Lincoln county, to receive from the
relator the amount of money due the state on a school land

contract of purchase for the southwest quarter of section 16, township 14, range 32 west of the 6th principal meridian, entered into by the state with one C. S. Guthrie, and by *mesne* assignments now owned by the relator, and to issue to him a receipt for said money. The issues were formed by proper pleadings, whereupon the cause was referred to Hon. J. H. Broady to take the testimony and report the same to the court, with his findings of fact and conclusions of law. Subsequently the referee made and returned to the court his findings, embracing eleven type-written pages, exclusive of the testimony upon which the same was based. The testimony and findings of facts of the referee may be summarized as follows:

On the 7th day of June, 1884, one C. S. Guthrie purchased of the state the land in controversy for the sum of $1,120, he paying down one-tenth of the principal and the interest on the remainder up to January 1, 1885, amounting to $30.78. By the terms of the contract he also agreed to pay the balance of the purchase price on June 7, 1904, with $60.48 interest thereon on the first day of January of each year. On July 11, 1884, Guthrie, by written indorsement, bargained, sold, and assigned said contract and his interest in said land to Anna S. Guthrie, which assignment was entered of record in the office of the commissioner of public lands and buildings on June 22, 1885. On the 14th day of April, 1887, the said Annie S. Guthrie duly sold, assigned, and conveyed her interest in said contract, and the said land, to the relator, and on the 18th day of the same month said assignment was duly recorded in the office of the commissioner of public lands and buildings. Immediately upon receiving said assignment relator took actual possession of the land in dispute, and ever since has held actual, open, and notorious possession thereof under claim of right under said contract, and has actually resided with his family during said time within a mile of said land. The relator has paid to the state on said contract, as assignee thereof, all

payments up to January 1, 1891, but through inadvertence has made no payment thereon since then. The relator did not intend to abandon, but expected to comply with, said contract. On the 1st day of January, 1892, the commissioner of public lands and buildings prepared and sent to the respondent for service upon relator a written notice to the effect that the interest due on said contract was delinquent for more than a year, and, unless all payments due thereon were paid within six months from the date of the service of the notice, such contract would be declared forfeited. George E. Prosser, the respondent's deputy, usually had charge of the notices of this character, and said deputy was at that time, and for a long time prior thereto had been, well acquainted with the relator and knew that he was a resident of Lincoln county. The respondent, with slight diligence, could easily have ascertained the residence of relator, and made personal service of said notice upon him. No effort was made either to ascertain the residence of relator or to make personal service upon him, but the notice was returned to the commissioner of public lands and buildings without service and without statement of the residence of the relator unknown. Afterwards, in June, 1892, the said commissioner caused to be published in the *North Platte Telegraph*, a newspaper of general circulation in Lincoln county, for three successive weeks, a notice to the effect that the interest upon said contract was delinquent, and if said delinquency was not paid within ninety days said contract would be declared forfeited. The publication of said notice was the only notice given that the rights of the relator under said contract of sale would be forfeited. On the 14th day of September, 1892, the board of educational lands and funds, by resolution unanimously adopted, declared said contract canceled, and notice of said cancellation was given by the commissioner of public lands and buildings on October 15, 22, and 29, and November 5 and 12, 1892, in the said *North Platte Telegraph*. Said notice fur-

ther provided that if said contract is not reinstated by the payment of the delinquent interest, said lands would be offered for lease by the county treasurer on the 21st day of November, 1892. On the date last aforesaid a lease in proper form was executed and delivered to one Thomas Stimson for said land, who paid to the respondent $1.87 to be applied as rental to January 1, 1893, and on January 23, 1893, said Stimson paid the further sum of $8.43 to be applied as rental to July 1, 1893. At the time said Stimson leased the land he was aware, as he admitted on the trial, that relator claimed some interest in the land, but refrained from making any inquiry of him on the subject. The first notice or knowledge relator had of the said forfeiture of his contract, or the lease to Stimson, was January 27, 1893, and on the 31st day of said month relator tendered to defendant $193.21 on said contract of sale, which was all that was due the state thereon, and he has kept said tender good.

The relator for fourteen years past has been a resident of Lincoln county, living within a mile of the land in dispute and near a station and post-office on the Union Pacific railroad named "Hershey," after the relator, and during the period covered by the transactions in the case at bar said Stimson has been a neighbor of and acquainted with the relator.

The question involved is the validity of the forfeiture of the contract. The contention of counsel for the relator is that the board of public lands and buildings had no jurisdiction or power to annul or cancel the contract issued to Guthrie, and assigned to plaintiff, inasmuch as no notice of the contemplated proceedings to declare a forfeiture of the contract was personally served upon the relator. If this position of counsel is well founded, then relator is entitled to the relief demanded. Section 16, chapter 80, Compiled Statutes, relating to the forfeiture of school land contracts, reads as follows: "If any lessee of educational

lands shall be in default of the semi-annual rental due the state for a period of six months, or any purchaser of educational lands be in default of the annual interest due the state for one year, the commissioner of public lands and buildings may cause notice to be given to such delinquent lessee or purchaser that, if such delinquency is not paid within six months from the date of the service of such notice, his lease or sale will be declared forfeited by the board of educational lands and funds. If after such notice the amounts due are not paid within six months from the date of the service of such notice thereof, the said contract of lease or sale may be declared forfeited; and the lands therein described shall revert to the state the same as though such lease or sale had never been made; and the order making such forfeiture shall be spread upon the records of the board of educational lands and funds. In case the owner of such contract of sale or lease be a non-resident of this state, or his address be unknown, the notice herein contemplated shall be published three weeks in some newspaper published or of general circulation in the county where the land is situated. The forfeiture may be entered by said board after ninety days from the date of such published notice. The provisions of this section shall apply alike to all the lands heretofore sold or leased, and to all lands hereafter sold or leased as educational lands of this state; *Provided,* The owner of any contract of sale or lease so forfeited may redeem the same by paying all the delinquencies and costs at any time before such land is again sold or leased." Under the statute just quoted no forfeiture of any contract of purchase of educational lands of the state can be declared because of the default of the purchaser in the payment of the annual interest due the state until notice to the delinquent purchaser of such proposed action has been given by the commissioner of public lands and buildings. Manifestly such is the import of the section. The giving of the notice is jurisdictional, and unless

it is given in the manner pointed out by the legislature, the board of educational lands and funds is powerless to act. This is no new doctrine. In *Smith v. White*, 5 Neb., 407, this court, in discussing the power to cancel a contract of purchase of school land, under the statute then in force, said: "The payment of the purchase money is a condition precedent which must be fully performed on the part of the purchaser to entitle him to an estate in fee; but the mere failure of a purchaser to pay the interest at the time it became due will not of itself forfeit the estate of the purchaser in the land. The statute requires notice to be given by the county treasurer to the purchaser, stating the delinquency complained of, and requiring the removal thereof by the fulfillment of the conditions of the covenants of the bond and contract." The statute under review, in the case quoted from, differs from the one now in force, which is copied above, in that it required the county treasurer to give to the purchaser the notice of the delinquency, but how the notice should be given is not expressly provided, while the present statute directs that the commissioner of public lands and buildings shall give the notice, and provides how it shall be given. But this change in the statute does not modify the rule so as to permit a forfeiture without notice to the delinquent purchaser. True, a notice was given to the relator in the case at bar by publication in a newspaper; but such notice was insufficient to confer jurisdiction on the board to declare a forfeiture of the relator's contract. The statute declares that "in case the owner of such contract of sale or lease be a non-resident of this state, or his address be unknown, the notice herein contemplated shall be published three weeks in some newspaper published or of general circulation in the county where the land is situated." (Comp. Stats., sec. 16, ch. 80.) Notice by publication is only authorized where the owner of the contract is a non-resident of the state, or his address is unknown. In all other cases the statute contemplates that

personal service of the notice must be made upon the delinquent. Doubtless such service may be made in the manner required by law for the service of a summons in a civil action, or any other mode which will afford the delinquent personal notice of the proposed action. It is conceded in this case that no notice of the proposed action of the board of educational lands and funds was ever personally given Hershey, although he was a resident of the state and his address and residence were known. The conclusion is irresistible that the notice by publication is void, and the personal service of notice on the relator was necessary as a preliminary to confer jurisdiction to declare a forfeiture of the contract.

_State v. Graham_, 21 Neb., 329, does not conflict with the conclusion here reached. In that case the proof showed that the relator was duly notified of the default in the payment of the interest on his school land contract, prior to the time the same was declared forfeited by the state, and the resale of the lands. Besides, there the relator knowingly suffered, without objection, the second purchaser from the state to expend money in making valuable improvements on the land. The relator was therefore estopped to afterwards assert that he had any title or interest in the premises. Here there was no estoppel, nor did the relator have notice that his contract was about to be canceled or annulled.

The conclusion we have reached in the case at bar does not conflict with the decision of this court in _Richardson v. Doty_, 25 Neb., 420. In that case the purchaser under a school land contract had failed to pay the interest thereon due the state for fifteen years, and during ten years of which period the land had been in the actual possession of a subsequent, good-faith purchaser from the state, who made valuable improvements thereon in the belief that he held the title, the first purchaser permitting him to so do without objection. The court held that the first purchaser was

barred, by his conduct, from asserting title against that of the second purchaser.

In the case we are considering Stimson had notice that the relator claimed the land, and therefore was not an innocent purchaser. As soon as the relator was apprised that his contract had been canceled by the state, and the land had been leased to Stimson, he tendered to the respondent the amount due on the contract, and brought this action to compel the defendant to receive the money thus tendered. The exceptions to the report of the referee are overruled, the report in all things is confirmed, and upon the relator depositing the amount of money heretofore tendered with the clerk of this court for the use of the county treasurer of Lincoln county, a writ of *mandamus* will issue as prayed.

WRIT ALLOWED.

POST, J., not sitting.