LIZZIE B. ROGERS v. C. S. TURPIN, MARTHA HAM, F. F. LEATHER AND MRS. JOE KELLER, Appellants.

THOMAS JOHNSON v. MARTHA HAM, C. S. TURPIN, BENJAMIN TURPIN, Appellants.

**Adverse Possession:** PAYMENT OF TAXES. No title to the east half of the southwest quarter of a given section of land is acquired by one to whom the east half of the *southeast* quarter of such section has been conveyed, notwithstanding the payment of taxes on the east half of the southwest quarter for more than thirty years, where it does not appear that any mistake was made in the description of the deed.

NOTICE. Inclosing land and leasing it to one who uses it for a pasture, for which purpose alone it was adapted, constitute sufficient possession to put a purchaser of land on inquiry and charge him with notice of the title of the one who inclosed and rented it.

**Cloud on Title.** A purchaser of an interest in land for certain heirs is entitled to a decree quieting her title to such interest, where a purchaser from other heirs is in possession claiming title to all the land.

**Deeds.** The grantee in a quitclaim deed of land executed by one who had previously conveyed all her interest, obtains no title where the former grantee is in possession.

**Injunction:** CO-TENANCY. One in possession of land as a tenant in common, is entitled to an injunction restraining her co-tenants from any interference with such possession.

*Appeal from Ringgold District Court.*—Hon. W. H.
TEDFORD, Judge.

SATURDAY, APRIL 9, 1898.

ACTION by plaintiff to quiet the title to eighty acres
of land, and the same relief was asked by defendants in
their cross-petition. Decree was entered quieting title
in the plaintiff, and defendants appeal. The second
action was brought to enjoin the defendants from inter-
fering with the possession of the plaintiff's tenant, and
a decree entered as prayed, from which defendants
appeal. Both cases are submitted on the same record,
under an agreement that the conclusion in the second
case shall be controlled by the decision in the action
to quiet title.—*Modified and affirmed.*

*McIntire Bros. & Jamison* for appellants.

*Henry & Spence* for appellee.

LADD, J.—Both parties claim title to the land in
controversy, correctly described as the "E. ½ of the S.
W. ¼ of Sec. 6 in Tp. 68 north, of range 28 west of 5th
P. M.," under Thomas Newall, who entered it March 1,
1856. He conveyed to A. Harback, May 13, 1857, and
the latter to A. and D. H. Chambers, June 24th of the
same year; but these deeds described the land as the
"E. ½ of the S. E. ¼ of Sec. 6." Upon the death of D. H.
Chambers, Eliza J. McGregor conveyed all her interest
in his estate to A. Chambers, and these were his only
heirs. A Chambers died testate in 1873, willing the land
to three trustees, to be held in trust for plaintiff. This
will has been admitted to probate in Ringgold county.
These trustees conveyed to themselves as trustees of
plaintiff, and afterwards, in 1892, John M. Kennedy,

the only survivor, executed a deed to her. Some question is made about the validity of these conveyances by the trustees. As in any event the plaintiff was the *cestui que trust*, we will not inquire concerning the devolution of the title by the trustees from themselves to themselves, or whether authorized by the will, which is not included in the record. All these instruments also describe the land as the "E. ½ of the S. E. ¼" of the section. The Chambers, the trustees, and the plaintiff have paid the taxes on the east one-half of the southwest one-fourth since 1859, and neither Thomas Newall nor his heirs have claimed any interest therein. Thomas Newall died in 1861, leaving a widow and four children, three of whom are living. The depositions of Mrs. Newall and Mrs. Harback, whose husband, A. Harback, died in 1864, were taken. Both recall that their husbands had land in Ringgold county; and Mrs. Newall, that a deed was given to Harback. But neither one is able to recollect the description, or the circumstances attending the execution of the deeds thirty-seven years previous. Indeed, there is no evidence that any mistake was made in the description. The payment of taxes for many years tends to show that the land was claimed by those making such payments, and the absence of any claim of ownership by the widow and heirs of Newall tended to show that he or they had parted with the title. The case is not like *Matthews v. Culbertson*, 83 Iowa, 434, or *Bacon v. Chase*, 83 Iowa, 521. In the former, the tax deeds under which defendants claimed were regular on their face, and they obtained conveyances and made improvements in good faith, and were induced by Mathews to believe he was making no claim to the land. In the latter the defendants claimed under an administrator's deed, and, owing to the laches of the plaintiffs, they were not permitted

to question the title of defendants who were in possession. Here no title is shown in the plaintiff, and no mistake proven in any of the deeds through which she claims title. The proofs referred to entitle plaintiff to no relief whatever.

II. On the seventh day of January, 1893, however, she obtained a quitclaim deed of the land in controversy from Mrs. Newall and her daughter, Margaret Dawson, and husband, which was placed on record December 26, 1894. At that time the plaintiff was in possession of the land. It was unoccupied until 1891, when a fence was constructed by Ham on one side. During the following year it was entirely enclosed by Borum, who used it as a sheep pasture. Laird leased it from March 1, 1893, one year, and during that time used it as a pasture and feed lot for cattle. Johnson took possession March 1, 1894, fenced the land again, and continued to occupy it, keeping thirty-five or forty cattle and horses thereon, up to the beginning of this action. All these parties leased the land of plaintiff, through her agents, and inclosed it under the terms of the leases, permitting removal of fences at their termination. It was uncultivated land, and devoted to the purposes for which it was suited. The acts of ownership over it were those necessary to enjoy its use in its present condition, and acquire the profits it might yield. *Colvin v. McCune*, 39 Iowa, 502; *Dice v. Brown*, 98 Iowa, 297. Such possession was sufficient to put defendants on inquiry, and charge them with notice of her title, if any, to the land. In 1894, Mrs. Newall and Margaret Dawson and husband executed a quitclaim deed to W. M. Ashbrook, under whom the defendants claim. But as they had no interest in the land at that time, and plaintiff was in possession under their former deed, no title passed. It follows that the plaintiff is entitled to a

decree confirming her title in an undivided one-half of the land in controversy.

III.   The other heirs of Thomas Newall (Benjamin C. Newall and wife, Ester Neal and husband, and Oscar N. Bell, only heir of Jesse A. Bell, deceased) executed quitclaim deeds to W. M. Ashbrook in 1894. The "h" was included in the name of this grantee by mistake; and he, as "Asbrook," conveyed the land to C. S. Turpin. The latter, after executing a mortgage to Mrs. Joe Keller, conveyed to his mother, Martha Ham. She thereby acquired the legal title to an undivided one-half interest in the eighty acres, and is entitled to a decree quieting her title thereto. The decree of the district court will be modified accordingly.

As the plaintiff was entitled to possession as a tenant in common, the writ of injunction was properly issued, enjoining any interference therewith by the defendants, and the decree in the second case should be affirmed.—MODIFIED AND AFFIRMED.