ALMOR STERN, Appellant, v. JACOB S. FOUNTAIN.

**Title to Accretions:** DEED FROM ONE WHO HAS CONVEYED LOTS TO WHICH ACCRETION IS MADE LATER: *Water and water courses.* A county conveyed certain lots, bounded on one side by a river, to plaintiff's prior grantor, absolutely describing the land by number. The county thereafter deeded to defendant's grantor a strip of land which had been added to such lots by accretion, but at no time

were the lots themselves wholly carried away by the changes in
the channel of the river.   Plaintiff brought an action against
defendant to quiet title to the strip so formed.   *Held*, that
when such accretion took place, and whether it was formed on
what was once the bottom of the river, were immaterial ques-
tions, since, in any event, such strip belonged to the owner of
the lots, and not to the county.   The deed made by the county
to plaintiff's grantor was without limitation.   It carried title
to the lots as they then existed, the boundary being the high
water mark of the river, and not the meander line of the sur-
vey.   The county thus parted with all its title to the lots, and
its deed to accretions thereto conveyed nothing.

**Adverse Possession:**   UNCULTIVATED LANDS:   *Possession.*   Where
defendant never fenced the land in controversy, and the receipts
produced by him to show that he had paid the taxes described
another piece of land, the fact that he went on the land about
every other year, and occasionally sent others to cut wood
therefrom, but did not know that they did so, was not sufficient
to constitute title by adverse possession, since the possession
was neither continuous nor open and notorious.

**Stare Decisis:**   FINDINGS OF FACT.   Where what was said in a for-
mer decision in regard to adverse possession concerned matters
of fact, the adjudication in that decision was not binding on
the court in subsequent cases involving adverse possession,
since the doctrine of *stare decisis* has no application to find-
ings of fact.

*Appeal from Harrison District Court.*—HON. FRANK R.
GAYNOR, Judge.

TUESDAY, OCTOBER 9, 1900.

ACTION to quiet title to land.   The plaintiff appeals
from a decree dismissing his petition.—*Reversed.*

*Roadifer & Arthur* and *L. R. Bolter & Sons* for appel-
lant.

*S. H. Cochran* for appellee.

LADD, J.—The plaintiff and one Jones, who afterwards
transferred his interest in the tract in controversy to the
plaintiff, acquired the paper title to lots 1 and 2 in section

30 in township 78 N. of range 45 W. of the fifth P. M.; for the Cedar Rapids & Missouri River Railroad Company conveyed to them any title it may have obtained under the act of congress of 1864, and, if a part of the swamp land grant, they procured that title, through mesne conveyances, of Americus Overton, to whom Harrison county had deeded the lots in October, 1864. The eastern boundary of these lots, as surveyed by the government in 1858, was the Missouri river, and the land in controversy is conceded and proven to have been added thereto by the process of accretion. As the original lots were at no time wholly carried away, it is immaterial to the present inquiry how or when this happened, or whether the space on which the particles accumulated was once the bottom of the river. No survey appears to have been made by the county, and the deed to Overton described the lots by number, and was without limitation. It carried title thereto as they then existed, with the high-water mark of the river, not the meander line of the survey, as the true boundary; and the subsequent accretions belonged to the owner of the lots, and not to the county. *Kraut v. Crawford,* 18 Iowa, 549; *Musser v. Hershey,* 42 Iowa, 356; *Steele v. Sanchez,* 72 Iowa, 65; *Ladd v. Osborne,* 79 Iowa, 93; *Coulthard v. Stevens,* 84 Iowa, 241. The county parted with all its interest, and thereafter had no more right to the accretions to land it had sold than a stranger. The conveyance then by the county to Chase in 1868 of the S. W. ¼ of the N. W. ¼ of this section, if conceded sufficiently definite in description, as was held in *Egan v. Fountain* *(Iowa), 78 N. W. Rep. 912, in so far as it included this added land, passed no title, and the defendant acquired nothing under his deed, of the same year, from Chase. If, then, he is entitled to that part of the accretions in controversy at all, it must be because of title acquired by adverse possession. But the evidence utterly fails to support this defense. It

NOTE.— Not to be officially reported.—REPORTER.

rests on the testimony of Fountain alone, which, in so far as bearing thereon, may be set out: "I took possession of the land described in said deed after receiving the same. * * * The land was timber land. I used it for the purpose of getting firewood and fencing. I got wood off it, off and on, at different times from the time I owned it up to the time I was enjoined. * * * At the time this injunction was served I had hauled a load of lumber and unloaded it upon the ground, and had a tenant to take possession. * * * I was not on the land every year." Cross-examination: "In 1868 I had the land surveyed by Samuel Dewell. I think we started from the section corner of 7 and 8, and ran south one mile and a half, then run east 80 rods. This is all the survey we made. The land I claimed was right south of the survey. I was on the land in the winter of 1868. The land I claimed is 80 rods south of the north line of section 29, and is a square 40 acres. * * * The river never ran over this land to my knowledge. I was not on the land every year. * * * I was on the land one year ago. I saw stumps there,—some of them, I think, 20 inches across. The timber growing on the land is cottonwood. I do not know as I have taken any timber off that land since 1868, but I sent others down there. Did not go there to see where they went. Did not send any one to show them where the land was. I was down there once with Mr. McCabe. That was about four years ago. I could not tell whether I was on this land in either the years 1868, 1869, or 1870. * * * I never caused the land to be fenced." Redirect: "I cannot say I have seen that land every year since 1868. I have probably seen it half the time. The land that I now claim was never in the river that I know of."

The defendant also claims to have paid taxes on the property assessed according to the description in his deed, but the receipts are for taxes levied on lot 1 in section 29. It will be observed that the land surveyed by Dewell was at least three-fourths of a mile north of that in controversy, and there is no evidence that the

defendant ever made any use of this tract. True, as a conclusion he declared that he got firewood and fence posts from it, but on cross-examination admitted that he had no personal knowledge of any timber being removed therefrom since 1868. The land was not inclosed by fence, and no part of it under cultivation. On the other hand, four witnesses testified that it was under water in 1868, and another thought it was either a low sand bar or in the river. Four declared there were no trees on it in 1880, and another that in 1882 the growth of timber was not high enough to obstruct the view of a person on horseback. The timber is shown to be willow and cottonwood, about six or seven inches in diameter, and, where standing apart, about double that. Several witnesses say no wood had been removed until the past three or four years. So that, in whatever light Fountain's testimony be regarded, his claim of adverse possession is refuted by a decided preponderance of the evidence. Merely going on this land every other year, and directing employes occasionally to cut and remove timber therefrom fell far short of pointing him out to the world as its owner. See *Barr v. Potter,* * (Ky.) — (57 S. W. Rep. 478). If he may be said to have assumed possession, it was neither continuous nor open and notorious. The acts of ownership, when there is no actual occupancy, must be such as are necessary to the enjoyment of the use, and to acquire the profits the land may yield in its present condition. *Rogers v. Turpin,* 105 Iowa, 186. Going on it occasionally, and supposing employes, so directed, have cut and hauled wood therefrom, do not meet this requirement. In *Egan v. Fountain, supra,* a plea of former adjudication was sustained, and what was said concerning adverse possession was not essential to reaching the result announced. Moreover, the doctrine of *stare decisis* has no application to findings of fact, and these furnish no obstruction to the correction of mistakes, which, in spite of

*Not officially reported. — REPORTER.

ceaseless vigilance, will creep into the work of all courts not above the limitations of human nature.—Reversed.

Granger, C. J., not sitting.