SAMUEL CARR ET AL., APPELLEES, V. MATT MILLER, APPELLANT.

FILED FEBRUARY 2, 1921. No. 21133.

1. **Deeds: CONSTRUCTION.** In the construction of every instrument for the conveyance of real estate or any interest therein, it is the duty of the courts to carry into effect the true intent of the parties, so far as such intent can be ascertained from the whole instrument and is consistent with the rules of law. Rev. St. 1913, sec. 6195; *Benedict v. Minton,* 83 Neb. 782.

2. ———: INTEREST CONVEYED. "Every conveyance of real estate shall pass all the interest of the grantor therein unless a contrary intent can be reasonably inferred from the terms used." Rev. St. 1913, sec. 6192.

3. ———: CONSTRUCTION. An instrument, duly executed, contained the following language: "The East Omaha Land Company does hereby grant, bargain, sell and convey unto the said Omaha Bridge and Terminal Railway Company, its successors and assigns, for terminal and railway purposes and uses, the following described real estate:" *Held*, that the phrase, "for terminal and railway purposes and uses," did not of itself limit the estate conveyed, or operate as an implied reversion in case the lands conveyed were devoted to a different use.

4. Estoppel: GRANTORS. A grantor is estopped by his deed to question the capacity of his grantee to take the estate conveyed by the deed.

5. Deeds: DEED TO RAILROAD COMPANY: CONSTRUCTION. Instrument and evidence examined, and the instrument *held* to convey an absolute title in fee.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed and dismissed.*

*Helsell & Helsell, Matt Miller* and *William Baird & Sons,* for appellant.

*Morsman & Maxwell, contra.*

CAIN, C.

This is an action in ejectment to recover a strip of land 100 feet in width and 970 feet in length, described in the petition, and located in the eastern edge of the city of Omaha on the west bank of the Missouri river. The case was tried upon the amended petition, the answer thereto, and plaintiffs' demurrer to divisions II, III, IV, V, VI, VII, VIII, and IX of the answer, and upon a stipulation between the parties that the allegations of fact contained in the amended petition and the answer thereto, subject to proper objections on the ground of immateriality, irrelevancy, and incompetency, should be taken as true. The district court sustained plaintiffs' demurrer to the divisions of answer named, to which the defendant excepted and stood

upon his answer. The cause then came on for decision by the court, a jury having been waived, and the court found that plaintiffs were the owners of the lands described in the amended petition and entitled to the immediate possession thereof. After the overruling of his motion for a new trial, defendant appealed to this court.

Under the stipulation of the parties, the amended petition and the answer thereto were settled as a bill of exceptions. There is therefore no disputed question of fact, and the question presented to us for decision is the construction of a certain instrument in writing executed on the 21st day of November, 1899, between the East Omaha Land Company and the Omaha Bridge & Terminal Railway Company, which the appellant claims constitutes a conveyance of the lands in controversy in fee simple, and the appellees contend conveyed only as easement or a right of way in said lands, which was abandoned by the grantee upon its subsequent conveyance of the land to a private person.

Both parties hereto claim title to the premises in controversey through the East Omaha Land Company, which is conceded to have held the title in fee on November 21, 1899, and for many years prior thereto. On that date the land company executed the deed or instrument under consideration to the terminal company. On March 31, 1902, the land company mortgaged the premises, with other lands, to the Old Colony Trust Company, however, "subject to said agreement and deed dated November 21, 1899." On January 16, 1903, in the United States district court at Omaha, a decree was entered foreclosing this mortgage, but the terminal company was not a party to the suit, and hence was not affected thereby. On June 10, 1903, the master sold the lands to Grafton St. L. Abbott, who purchased in trust for the benefit of the bondholders, and he received a deed. On May 9, 1903, the land company conveyed to Abbott by deed. Abbott conveyed to himself and two associate trustees, and plaintiffs in this action are their successors. As the mortgage was expressly made subject

. to the deed of November 21, 1899, and the terminal company was not a party to the foreclosure proceedings, the legal situation is the same as if the land company had executed a deed direct to plaintiffs on May 9, 1903. On June 6, 1917, the terminal company conveyed the land in controversy to Samuel P. Elliott, who on October 3, 1917, by ordinary deed, conveyed it to the defendant herein.

The instrument of November 21, 1899, consists of eight typewritten pages. As the recitations of the instrument down to and including the granting clause are necessary to an understanding of the situation, as well as to the construction of the instrument, we set that part out in full, as follows:

"This indenture, made this 21st day of November, A. D. 1899, between the East Omaha Land Company, hereinafter called the Land Company, party of the first part, and the Omaha Bridge and Terminal Railway Company, hereinafter called the Terminal Company, party of the second part, corporations organized and existing under the laws of the state of Nebraska, Witnesseth:

"Whereas, the Land Company owns a tract of land comprising seventeen hundred (1,700) acres, more or less, located along the Missouri river between one and three miles northeasterly from the post office in the city of Omaha in the state aforesaid, which is more particularly shown upon the map hereto attached and made a part hereof; and,

"Whereas, the Land Company has expended several hundred thousand dollars, in improving said lands, by clearing the same, and laying out, grading and paving certain streets, and locating certain manufacturing establishments thereon, and preparing generally for the location of future industrial establishments; and,

"Whereas, the success of the plans of the Land Company depend largely upon adequate trackage facilities and connections for present and future industries and enterprises, which may be established upon its lands aforesaid; and,

"Whereas, to secure a proper system of trackage, the Land Company on the 1st of June, 1889, entered into a contract with the Union Pacific Railway Company for the construction and operation of a system of trackage upon said lands, under which that company did construct several miles of tracks thereon; and,

"Whereas on the 23d day of July, 1892, a contract was executed between the Interstate Bridge and Street Railway Company, predecessor of the Terminal Company, of the first part, the Land Company, of the second part, and Drexel & Company and John Lowber Welsh, bankers, of the third part, by the terms of which the Bridge Company agreed to construct and maintain a bridge across the Missouri river, and terminal tracks, in accordance with the schedule attached to said contract, which contract contained certain provisions requiring the Terminal Company 'to purchase of the Union Pacific Company all the tracks, franchises and rights of way, built on the land of the East Omaha Land Company, or duplicate them,' and which contract also contained certain provisions by which the Land Company agreed to make to the Bridge Company a conveyance 'of certain railway rights of way on and over the land of said Land Company, which said rights of way are to be the same as those heretofore contracted to be conveyed by the said Land Company to the Union Pacific Railway Company;' and,

" Whereas, in carrying out said contract the Terminal Company has constructed a bridge across the Missouri river, and also established certain extensive tracks and terminal facilities in connection therewith on both sides of the Missouri river and in the cities of Council Bluffs, Iowa, and Omaha, Neb., and has also purchased from the Union Pacific Railway Company the tracks built by that company upon the lands of the Land Company; and,

"Whereas, it is deemed best that the system of trackage for the lands of the Land Company shall consist of a belt line surrounding said lands, from which spur or side tracks shall extend north and south to and along the intersecting alleys, the same to be located along what is known as

Avenue G, East Omaha, from the Nebraska meander line of the Missouri river, surveyed in 1856, to near the west approach of the Terminal Company's Missouri river bridge, thence northerly by suitable curves to what is known as Avenue M, East Omaha, thence west along Avenue M to the western limits of the lands of the Land Company. That from said belt line side tracks shall turn out north and south on suitable curves to the alleys which the Land Company may hereafter establish on its lands in accordance with its general plans:

"Now, therefore, in consideration of the premises and the building by the Terminal Company of the bridge over the Missouri river, as aforesaid, and the purchase of said tracks from the Union Pacific Railway Company, and the construction of other tracks, the said East Omaha Land Company does hereby grant, bargain, sell, and convey unto the said Omaha Bridge and Terminal Railway Company, its successors and assigns, for terminal and railway purposes and uses, the following described real estate, situated in the county of Pottawattamie, Iowa, and in the county of Douglas, Neb."

There are other provisions in the instrument which we shall consider later on, in so far as they are discussed in the briefs or appear material.

Appellant contends that the instrument conveyed an absolute title in fee simple, while the appellees contend that the instrument taken together and considered as a whole, conveyed only a right of way, and that the words, "for terminal and railway purposes and uses," indicate an implied reversion or forfeiture for abandonment. It will be observed from that portion of the instrument above quoted that the full consideration for the execution of the deed had passed to the grantor therein. The land company had about 1,700 acres of land located along the Missouri river, in the city of Omaha, which it was engaged in developing, improving and placing upon the market. In the course of the work of development the land company considered it necessary to have a proper system of trackage for taking care of the then present and future business

enterprises and industries located in that vicinity. The land company had on June 1, 1889, entered into a contract with the Union Pacific Railway Company for this purpose and part of the construction work was done by that company. Again, on the 23d day of July, 1892, the land Company entered into another contract with the Interstate Bridge & Street Railway Company, the predecessor of the terminal company, for the construction and maintenance of a bridge across the Missouri river, and terminal tracks, which was also in furtherance of the land company's purpose of development. A significant thing to be observed from the recitals of the instrument preceding the granting clause is that all of the things that the land company had stipulated to be done had been done at the time of the execution of the instrument. The bridge across the Missouri river had been built by the terminal company, and there had been established the extensive tracks and terminal facilities in connection therewith on both sides of the Missouri river, and there had also been purchased from the Union Pacific Railway Company the tracks built by that company upon the lands of the land company. As far as anything appears from the recitals in this instrument, all the consideration for the execution of the deed of conveyance from the land company to the terminal company had passed. And the language of the granting clause is the language usually employed in making an absolute conveyance of land, with the exception that there are added thereto the words, "for terminal and railway purposes and uses." The instrument contains no provision for a reversion of the title or possession of the real estate or for its forfeiture in case the land is used for any other purpose, or any other event.

The appellees make several contentions which will be noticed in the course of this opinion. Their first contention is that a railway company in this state is not competent to acquire any higher title to real estate than an easement or right of way therein, which is subject to be divested for nonuser or abandonment, citing in support of the con-

tention the following Nebraska cases: *Myers v. McGavock*, 39 Neb. 843; *Blakely v. Chicago, K. & N. R. Co.* 34 Neb. 284; same case, 46 Neb. 272; *Roberts v. Sioux City & P. R. Co.*, 73 Neb. 8; *George v. Pracheil*, 92 Neb. 81. Of course, if this contention is true, it disposes of the case in the appellees' favor without further discussion, for the reason that the defendant appellant claims title through a grantee of the Omaha Bridge & Terminal Railway company.

As to the case of *Myers v. McGavock*, 39 Neb. 843, 870, this court said: "The Union Pacific Railway Company is, and was at that time, a corporation organized under the laws of the United States, and by reason of the constitutional provision just quoted was incompetent to take title to the real estate by the conveyance from McGavock; but this conveyance is not therefore void. It is, at most, voidable. Its title is valid against every one but the state, and can be divested only by proceedings brought by the state for that purpose. *Carlow v. Aultman*, 28 Neb. 672." Under this case the plaintiffs could not raise the question of the competency of the terminal company to take a fee title to the land, as they hold, through mesne conveyances from the land company, which is the common source from which the parties claim title, and the land company is estopped by its deed of November 21, 1899, from raising the question. 16 Cyc. 688; 10 R. C. L. 676, sec. 5. In *Blakely v. Chicago, K. & N. R. Co.*, *supra*, the conveyance was for "right of way and for operating its railroad *only*," and the court based its decision upon that ground in the following language: "In the case at bar there is a limitation in the grant to a particular purpose, and that does not contemplate a transfer to another company of a part of the right of way. Such conveyance is unauthorized under the deed from the plaintiff. Whether such conveyance could be made in case the deed had been absolute in form, does not arise in this case, and therefore will not be determined." *Roberts v. Sioux City & P. R. Co.*, *supra*, was a case involving the question of whether an individual could obtain, by adverse possession, title to right of way of a

railway company obtained by condemnation proceedings, and it was decided in that case that the plaintiff had not established adverse possession, and the court expressly stated in the fifth section of the syllabus that "the question whether in any case a railroad company can be deprived of its right of way by adverse possession is not involved in this case, and is not decided." The point upon which the court based its decision was that use of the land made by the adverse claimant was not inconsistent with, or adverse to, the railway company's enjoyment of the easement.

In the case of *George v. Pracheil, supra,* the deed to the railway company, and which was decisive of the case, contained after the granting clause an express provision for reversion, as follows: "Provided that in case said railroad company do' not construct their road through said tract, or shall after construction permanently abandon the route through said tract of land, then the same shall revert to and become reinvested in the said grantors, heirs and assigns." It is obvious from the language just quoted that the case cited could not by any possibility be held to sustain the appellees' contention.

It will appear from the foregoing review of the cases cited on this subject in appellees' brief that this court has not heretofore held that a railway company is incompetent to take title in fee to real estate to the extent that any one except the state can question the title. *Myers v. McGavock,* 39 Neb. 843; *Carlow v. Aultman,* 28 Neb. 672. We hold on this point that the land company and all its grantees and subsequent grantees, including plaintiffs, have no right to question the competency of the terminal company to hold title in fee to the premises.

The second contention of appellees is that the instrument of November 21, 1899, should be read as a whole and construed according to the intent of the parties as disclosed thereby, citing section 6195, Rev. St. 1913; *Benedict v. Minton,* 83 Neb. 782; *Jackson v. Phillips,* 57 Neb. 189; *Rupert v. Penner,* 35 Neb. 587. We readily concede the soundness of appellees' contention in this respect, and in

the construction of the instrument under consideration have observed the rule he invokes.

Appellees further contend that the words, "for terminal and railway purposes and uses," show that the intent of the parties was that the terminal company was to have a right of way only, citing nine cases in support of the contention. We have examined all these cases, and, in our opinion, none of them support this contention. We think that the words quoted amount at most only to a description of the use to which the land was to be put, or at most a covenant for the violation of which a suit for damages might be maintained. As has been stated before, there was no provision whatever in the instrument under consideration providing for a reversion to the grantor or for a forfeiture of the grant in case the land was devoted to any other use. We cannot ignore the fact that, if the grantor in the instrument under consideration had intended the words quoted to be a condition subsequent, the nonperformance of which would result in a reversion of the fee to the grantor, the land company could have used language to express that intent. In considering this point, too, we should take into consideration section 6192, Rev. St. 1913, which provides: "Every conveyance of real estate shall pass all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." We find nothing in the words, "for terminal and railway purposes and uses," which indicates that the grantor intended to reserve in itself any interest whatsoever in the land granted, or even that the language constituted a restriction of the use of the land to the railway tracks and facilities. Before such a construction could be approved, it would be necessary to find some language in the instrument indicating such an intent. Indeed, as far as anything that can be gathered from the instrument is concerned, the sale of this particular strip of ground by the terminal company might have been for "terminal and railway purposes and uses." 8 R. C. L. 1109, sec. 170, on this point is as follows: "While no precise form of words is necessary

Carr v. Miller.

to create a condition subsequent, still it must be created by express terms or by clear implication, so as to leave no doubt of the grantor's intention." To the same substantial effect is 13 Cyc. 645. In *Fitzgerald v. Modoc County,* (164 Cal. 493) 44 L. R. A. n. s. 1229, it was held: "A provision in a deed of land to a county, that it is 'to be used as and for a county high school and premises,' does not create a condition subsequent which will entitle the grantor to reenter if the county attempts to sell the property." To the same substantial effect are the following cases: *Stuart v. Easton,* 170 U. S. 383; *Bald v. Nuernberger,* 267 Ill. 616; *Downen v. Rayburn,* 214 Ill. 342; *Supervisors of Warren County v. Patterson,* 56 Ill. 111; *City of Huron v. Wilcox,* 17 S. Dak. 625; *Killgore v. Cabell County Court,* 80 W. Va. 283, L. R. A. 1918B, 692. From the authorities cited and from the absence of words in the instrument providing for a reversion or forfeiture, we must hold that the words, "for terminal and railway purposes and uses," did not create any condition subsequent, or imply a reversion, or provide for a forfeiture.

It is finally contended by the appellees that the recitations of the instrument itself evidenced the intention of the grantors to convey only a right of way or easement, or an estate upon condition subsequent, upon the nonperformance of which title reverted to the plaintiffs in this suit. Passing the obvious question much discussed in the authorities, the benefit from the things referred to in these recitals and the general rule that only the original grantor or its heirs can take advantage of the nonperformance of a condition subsequent, we nevertheless proceed to examine the whole instrument and apply to it the liberal rule of construction established by our statute and the decisions of this court and contended for by the appellees. We have set out the recitals up to the granting clause in the instrument under consideration, and we agree with the contention of the appellees that these recitals challenge our attention. But we are unable to agree that the instrument was made as contended for by appellees, "primarily for the benefit'

of the large tract of land, nearly three sections, owned by the land company," for the reason that it appears from these recitals that the land company had already received the benefit from the things referred to in these recitals preceding the granting clause. We agree with appellees that the contract must be read in the light of these recitals, but we are unable to agree to the conclusion that they evidence that the terminal company was to have only a right of way over the lands. We think it a more reasonable conclusion that both parties intended that the land should be conveyed in fee simple to the terminal company "in consideration of the premises," as the instrument recites, which premises are shown to have been things already performed, a consideration already executed. A large amount of valuable work had been done by the terminal company and its predecessors, and it seems reasonable to conclude that the lands conveyed by the instrument under consideration were in payment for this work.

Appellees contend that there are certain provisions in the recitals succeeding the granting clause of the instrument which evidence an intent to convey only a limited estate. One of these provisions is that the description of the land defines the limits of the 100-foot strip by the belt line, of which the lands in suit are, it is said, a part. In paragraph C of the description this is specifically referred to as "the belt line right of way as herein described." We think, however, that the quoted words were merely descriptive, and did not relate to the lands in controversy.

It is next contended by appellees that, as the instrument expressly reserves to the land company the accretions accruing to the two tracts described in paragraphs C and D, fronting on the river, excepting a portion thereof, it was the intention that the land company should have the fee, claiming that the accreted lands go with the fee, and not to the holder of an easement. The general rule that accreted lands go with the fee is undoubtedly correct. But it may well have been that the land company desired to change the general rule by this agreement, and we see no reason

for inferring from the provision under consideration that the title to the terminal company was intended to be less than a fee.

Appellees have suggested to us the question of what is the significance of the provision that the land company shall not without the consent of the terminal company convey "to any other railroad company free right of way over or upon its lands" except on failure of the terminal company to build tracks to serve industries on these lands as required by the agreement. Their argument is that, as the instrument refers to "rights of way" only in this clause, the same should be true of the grant made by the instrument. We do not think that this logically follows at all. The land company may as well have bound itself to any other thing as well as not to grant free right of way over its other lands to any other railway company. It was apparently a provision to insure the terminal company against a competitor in its field except on its failure to build tracks, and was a separate undertaking entirely from the conveyance contained in the instrument. Even if the terminal company had made a complete failure to build any tracks and the land company had granted to another railway company free right of way over its other lands, it would not have affected the construction of the instrument in any way whatever.

Again appellees' counsel contends that it would be absurd to hold that it was the intention of the parties to convey a fee, because, if that were true, then the terminal company could convey away all the land received under the instrument, and thus defeat the very purpose of the land company entirely. The obvious answer to this objection is that, from the recitals of the instrument itself, the purpose of the land company, as far as any act on the part of the terminal company was concerned, had been fully accomplished and secured at the time the instrument was executed. Under the circumstances then existing as disclosed by the instrument itself, the contingency suggested by counsel could not possibly have arisen.

We have examined this whole instrument with care and find nothing in it indicating that the parties intended that any estate less than a fee should be conveyed by it. The language of the instrument convinces us that the intent was to convey absolute title in fee simple. The land company expressly acknowledges receipt of all benefits which induced it to make such a conveyance, and there is no claim that the terminal company was in default of any of its engagements either at the time of the conveyance or at any other time. It follows that, in our opinion, the defendant was entitled to the title and possession of the premises, and that the judgment of the district court is erroneous.

We recommend that the judgment of the district court be reversed and the action dismissed.

PER CURIAM. For the reasons stated in the forgoing opinion, the judgment of the district court is reversed and the action dismissed, and this opinion is adopted by and made the opinion of the court.

REVERSED AND DISMISSED.