STOCK YARDS NATIONAL BANK, APPELLEE, V. T. E. WYMAN, COUNTY TREASURER, ET AL., APPELLANTS.

FILED JANUARY 7, 1936. No. 29516.

*William H. Wright, Attorney General, George W. Ayres* and *Williams & Williams,* for appellants.

*Jackson & Rice, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ.

GOOD, J.

This is a controversy over a lease of section 16, township 23 north, range 9 west, in Wheeler county, Nebraska, being a part of the state school lands.

Plaintiff claims to be entitled to possession of the school lands as assignee of a lease issued in 1924 to one Seymour; that the commissioner of public lands and buildings had wrongfully declared the lease forfeited for nonpayment of rentals, and had issued a new lease to defendant Wolf, who has forcibly and wrongfully dispossessed plaintiff. Plaintiff prayed to be allowed to redeem from the forfeiture and for reinstatement of its lease, and that title and right of possession be quieted in it as against defendant Wolf and the commissioner of public lands and buildings, and for other equitable relief.

The commissioner of public lands and buildings answered, admitting the former lease, alleged that the assignment to plaintiff had never been recorded in his office; alleged that the lease had been forfeited for nonpayment of rent, and that the premises had been lawfully leased to defendant Wolf. Defendant Wolf answered, alleging the rental of the land to himself and that he is the holder of the lease, and denied plaintiff's rights. The trial court found for plaintiff and reinstated its lease upon condition of payment of the amount of rentals then due the state. The commissioner of public lands and buildings and defendant Wolf have appealed.

The record reflects the following pertinent facts: In 1924 the lands in question were leased by the then commissioner of public lands and buildings to Seymour, who thereafter assigned his lease to McCampbell & Nibecker, Inc., which assignment was recorded in the office of the commissioner of public lands and buildings. Thereafter, McCampbell & Nibecker, Inc., assigned the lease to plaintiff, which assignment was never recorded in the office of the commissioner of public lands and buildings. Subsequent to the assignment to plaintiff, McCampbell & Nibecker, Inc., was reorganized and the name changed to

McCampbell Company. It appears that McCampbell Company, or Mrs. McCampbell, remained in actual possession of the land for plaintiff, and it had arranged for payment of the rentals through the McCampbell Company. It now appears that the rentals were paid up to July, 1931.

In 1932 the commissioner of public lands and buildings, by registered mail, served notice on McCampbell & Nibecker, Inc., that it was in default in payment of rentals, and that, unless such defaulted payments were made within 90 days, the lease would be forfeited. So far as the record discloses, plaintiff had no knowledge of this notice. In 1933 the board of educational lands and funds declared the lease forfeited for nonpayment of rental that was in arrears. In February, 1934, the then commissioner of public lands and buildings gave notice, by publication in a newspaper published in Wheeler county, that at 2 o'clock p. m. on the 27th day of February, 1934, at the office of the county treasurer in Bartlett, Wheeler county, he would offer for lease at public auction the land in question.

October 18, 1933, plaintiff addressed a letter to the county treasurer of Wheeler county, asking to be advised of the status of the lease of the particular land and the date to which rentals had been paid. The treasurer, by his assistant, answered, saying: "Last rental paid to 7-1-33. Semiannual rental is $96.00. Total rental now due $533.80." Thereafter plaintiff was informed of the notice published in February, 1934, and, through its attorneys, made inquiry of the treasurer of Wheeler county as to the amount required to redeem, and received the following reply under date of February 15, 1934: "In regard to the McCampbell school lease—there are 5 payments due. The amount due, including interest, is $519.20." On the 26th of February the plaintiff, through its attorneys, delivered to the treasurer of Wheeler county a draft for $519.20, and requested that a receipt therefor be duly issued. A clerk in the treasurer's office received the draft and stated that a receipt would be issued and sent to plaintiff or its attorneys. Either on that day or the morning following,

the treasurer, or one of his assistants, caused telephone inquiry to be made of the office of the commissioner of public lands and buildings concerning what should be done with reference to the auction of the lease of the premises, with the information that the amount of $519.20 had been paid. The deputy commissioner directed the receiving of the amount and not to include the lease of the lands in the auction sale. On the 27th, and prior to the hour of sale, defendant Wolf appeared and made inquiry, desiring to bid on the lease of this particular section of land, and was informed that the lease had been redeemed. Thereupon, a further inquiry by telephone was made of the office of the commissioner of public lands and buildings, and the deputy commissioner then directed auction of the lease of this particular land. Accordingly, on that afternoon a lease of the land was auctioned by the county clerk of Wheeler county, and defendant Wolf became the purchaser or bidder for the lease of the land. On the 28th day of February, 1934, the treasurer's office returned to plaintiff's attorney the draft, with the information that the land had been leased to Wolf. A controversy arose, and the lease was not actually delivered to Wolf until about the 10th of April, 1934. Plaintiff, through its agents, was in possession of the school land in question, and Wolf forcibly removed the property of plaintiff's agents from the land and took possession thereof. On April 17, 1934, this action was begun, with the result above indicated.

The rights of defendant Wolf depend on whether there was a valid auction of the lease to him. Section 72-217, Comp. St. 1929, provides, among other things, that "The commissioner of public lands and buildings may, at least once in each year, designate a day and hour for offering in a public manner, at the office of the county treasurer in the respective counties, lease contracts on all of the educational lands which may be vacant and subject to lease in that county at the time of such offering. He shall announce said offering in a public manner by publishing for at least three weeks preceding said auction in

one or more of the newspapers published or of general circulation in the county in which said unleased land is located and shall, at the time arranged, be at the office of the county treasurer of the county in which said land is located and offer the same for lease as heretofore provided. * * * *Provided,* if said commissioner is unable to attend the offering aforesaid his deputy or the county treasurer may, upon his direction, act in his stead."

It appears from the record in this case that neither the commissioner of public lands and buildings, nor his deputy, nor the treasurer of the county was present at the public auction, and that the auction was conducted by the county clerk of Wheeler county. We find no authority for an auction conducted in this manner. The statute authorizes certain persons only to conduct such auction and, by implication, excludes all others. Since the statute prescribes the manner in which the auction shall be conducted, it follows that, if that manner is not substantially followed, there could be no valid auction. Defendant Wolf acquired no right by virtue of the invalid auction, and the lease to him was a nullity.

We next come to the question of whether there was a valid forfeiture so that the leased premises were reinvested in the board of educational lands and funds. Section 72-219, Comp. St. 1929, provides: "If any lessee of educational lands shall be in default of the semiannual rental due the state for a period of six months * * * the commissioner of public lands and buildings may cause notice to be given to such delinquent lessee, or purchaser that, if such delinquency is not paid within ninety days from the date of the service of such notice, his lease or sale contract will be declared forfeited by the board of educational lands and funds. If the amounts due are not paid within ninety days from the date of the service of such notice, the contract of lease or sale may be, by said board, declared forfeited and the lands therein described shall revert to the state the same as though such lease or sale had never been made. * * * The service of the notice herein contemplated to

be made by registered letter. * * * In serving the notices of delinquency and forfeiture herein provided for, the commissioner shall recognize as the lessee or owner of the lease or sale contract the person or persons whose title appears last of record in his office: *Provided,* the owner of any contract of sale or lease so forfeited may redeem the same by paying all delinquencies, fees and costs of forfeiture at any time before such land is advertised to be leased at public auction."

Since there was no valid auction of the lease on the 27th day of February, 1934, the notice given for the auction to be held on that day became *functus officio,* the same as if no notice had ever been given. Consequently, before the premises could be auctioned again, another notice must be published. The statute provides that the plaintiff may redeem at any time before publication of the notice. Until another notice was given, it was entitled to redeem.

The record discloses that it has been the policy of the board of educational lands and funds to permit redemption from forfeiture of school land leases at any time prior to the actual leasing of the same to another. It may be observed that before the published notice was complete plaintiff attempted to redeem. It now appears that $519.20 was not the full amount of rental due. This, however, was due to an error made in the county treasurer's office. The plaintiff stood ready and willing to pay the full amount and paid the amount that it was advised was required. The record also discloses that at the hearing plaintiff tendered and paid into court the amount that was then determined to be due on the lease, including interest and costs.

Under the facts disclosed, the trial court rightly held that plaintiff was entitled to redeem, and reinstated its lease.

AFFIRMED.