WARREN MULHALL, APPELLEE, V. STATE OF NEBRASKA,
APPELLANT.

299 N. W. 481

FILED JULY 29, 1941. No. 31135.

*Walter R. Johnson, Attorney General,* and *Robert A. Nelson,* for appellant.

*Frederick M. Deutsch* and *Sifford & Wadden, contra.*

Heard before ROSE, EBERLY and YEAGER, JJ., and THOMSEN and WENKE, District Judges.

THOMSEN, District Judge.

This action is brought by the plaintiff, appellee, against the defendant, appellant, to quiet title to lands in Dixon county, Nebraska. Defendant filed cross-petition to quiet title to the accretions to such land. The plaintiff also asked that defendant, and others, be enjoined from selling or offering to sell the land in question. The district court found in favor of the plaintiff, and against the defendant on its cross-petition, and the defendant appeals.

Under authority of chapter 72, art. 2, Comp. St. 1929,

section 72-201 *et seq.*, the commissioner of public lands and buildings is authorized to lease and sell school lands under certain conditions. July 1, 1914, in compliance with the statutes a certificate of sale to certain school land was issued to Jacob Bottorff after auction at which he was the successful bidder. The consideration was $1,000, one-tenth of the purchase price being then paid, the balance at the end of 20 years. The contract further provided for annual interest payments. The property described was "The Southeast Quarter of the Southwest Quarter (SE ¼ SW ¼) of Section 16, in Township 31, Range 6 East of the 6th Principal Meridian, containing forty acres, more or less, according to the United States survey thereof."

Two assignments of this contract were made: The first from Bottorff to John Mulhall on February 10, 1920, and the second from John Mulhall to his son, Warren Mulhall (the plaintiff), on April 17, 1923. Both assignments were properly recorded in the office of the land commissioner. Both assignments described the land as above with the addition of the words "and the accretion thereto."

The events between the immediate parties prior to March 28, 1938, are immaterial to a decision, but on that day the commissioner of public lands and buildings mailed to the plaintiff a letter stating that the time limit for the payment of the purchase price on the foregoing sale contract had expired and that, "unless the balance of this contract is paid in the near future or proper arrangements made for an extension of time, the land covered by this contract will be advertised and offered for sale." Further correspondence shows that he owed delinquent interest for two years. The plaintiff asked for an extension of time, and hearing before the board on his application was set for May 9, 1938. On that day the board met and by unanimous action canceled plaintiff's contract, but this action of the board on a hearing on May 23, 1938, and June 9, 1938, was set aside, it being shown that plaintiff had arranged for a continuance of the first hearing before May 9 because of the inability of his counsel then to be present, and

that the secretary of the board had agreed to such continuance. At the June 9 meeting of the board its action of May 9 was definitely rescinded, Mr. Mulhall was given 30 days within which to make payment of principal and interest, and it was decided to offer to Mr. Mulhall a deed to only the 40 acres, specifically excluding accretions. Mr. Mulhall declined the proffered deed, but demanded a deed with land described as in the original contract. The principal and interest have been paid in part to the county treasurer, and in part into court, so that both are available to the state. Proper tenders had theretofore been made, so no question is presented in that respect. The board never again declared the contract canceled or forfeited for failure to pay delinquent interest or principal. To declare a forfeiture for failure to pay interest is mandatory under section 72-219, Comp. St. 1929. Thus, the contract is still in full force and effect. See generally *Hile v. Troupe,* 77 Neb. 199, 109 N. W. 218; *State v. Cowles,* 90 Neb. 839, 134 N. W. 959; *Stock Yards Nat. Bank v. Wyman,* 130 Neb. 113, 264 N. W. 157; *Spahr v. Godfrey,* 130 Neb. 539, 264 N. W. 560. *Richardson v. Pratt,* 20 Neb. 196, 29 N. W. 382, and *State v. Clark,* 39 Neb. 899, 58 N. W. 585, cited by defendant, are not in conflict with this conclusion, although decided under the old law, since superseded by section 72-219.

The plaintiff contends that the board of educational lands and funds, when presented with full payment of principal and interest, was bound to issue a deed in conformity with the sales certificate, and had no power to add restrictions or reservations, first, because the sale certificate controlled by its description the extent of property, with whatever legal implications the wording might bear, which the state had agreed to sell and the purchaser had agreed to buy; and, second, that such board is a creature of law and has no power to dispose of educational lands other than in the manner set forth in the statute; that since the statute, under which it operates, does not authorize the board to sell less than a fee, it has no power to exclude accretions

from the land offered to be sold, citing *State v. McKelvie,* 111 Neb. 224, 196 N. W. 110. In that case the sale certificates reserved mineral and other rights, and the court held the board was not authorized to make such reservations. In the instant case it would seem that, if reservations of additional land acquired by accretion were made in the sale certificate, a sale of the fee to the original 40 acres alone might be within the authority granted to the board. Since such reservations were not made in the sale certificate, this second point of the plaintiff's reasons we need not now decide. On the first point, however, we agree. The board had the right to declare a forfeiture for nonpayment of interest, proceed with a resale of the property as provided by statute, or grant further time for payment, to a certain extent discretionary, or to receive payment, and, if in full, then to issue a deed in accordance with the terms of the sale certificate. The original sale certificate determined the description to be followed, and the area therein agreed to be sold could not be limited or enlarged in the deed. The legal connotations were without the board then to avoid, the state having in the sale certificate bound itself to sell the quarter of the quarter-section as described.

When the sale contract with Bottorff was made in 1914 the Missouri river was probably a city block to the east of the east line of the forty. The original United States survey placed the river partly along the east side of the quarter, and as late as 1886 the river had moved westward through the forty and later only a few feet east from the line on the south and about two-thirds of a block on the north. The original survey showed the tract to contain 48.80 acres—that portion of the southeast quarter of the southwest quarter and the southwest quarter of the southeast quarter of section 16 which the river had left unplowed —and was known as lot five, when conveyed by the United States of America to the state of Nebraska. From a point directly east of the tract in question to a point directly north, the river turns and describes a wide arc. The line thus made, in determining accretions, is proportionately

divided among the adjacent landowners, and as a consequence the accretions to this parcel go in a' northeasterly direction, not directly easterly.

When in 1914 Bottorff became the buyer, such a small area of accretion land, five to eight acres in all, adjoined the quarter that, had it so remained, no question would probably have arisen; but since then the river has gradually moved eastward so that now to the northeast—the direction to which accretions in this instance are measured —about 78 acres of new land has formed. The main contest is for this additional land.

Testimony as to what quantity of land the original buyer thought he was receiving and that the then board estimated the land's value at $25 an acre is not impressive nor controlling. The small quantity of accretions then existing— a width along the forty of only about 20 rods, barely enough for comfort from the ravages of the Big Muddy—would hardly be considered, or, if considered, would be included in the clause "more or less." Furthermore, such testimony was inadmissible, under all the circumstances. What was intended to be conveyed must be determined from the instrument. *Carr v. Miller*, 105 Neb. 623, 181 N. W. 557; *Eiseley v. Spooner*, 23 Neb. 470, 36 N. W. 659; 18 C. J. 277 *et seq.* In any event, the description in the contract controls and carries with it whatever accretions had then formed. *De Long v. Olsen*, 63 Neb. 327, 88 N. W. 512. Accretions attach in the same manner as fixtures and growing trees, require no special description, and must be expressly excepted or reserved to avoid a transfer. See generally 45 C. J. 571; Note, 58 L. R. A. 199; *Stern v. Fountain*, 112 Ia. 96, 83 N. W. 826; *Haynie v. May*, 217 Ia. 1233, 252 N. W. 749; *Jefferis v. East Omaha Land Co.*, 134 U. S. 178, 10 S. Ct. 518; *Topping v. Cohn*, 71 Neb. 559, 99 N. W. 372. *Stavanau v. Gray*, 143 Minn. 1, 172 N. W. 885, cited by defendant, is a description by metes and bounds, and yet is contrary to the weight of authority. Shepard's Citations show it cited but once on the subject under discussion and then discredited. *Haynie v. May, supra.* The

description as given above in the quoted portions of the contract was sufficient to carry with it all accretions.

It seems established by the evidence that, when the state of Nebraska acquired the land under discussion, the tract was then located on the river and thus the title to the accretion at the time of sale to Bottorff would pass to him and later to his successors. *Topping v. Cohn,* 71 Neb. 559, 99 N. W. 372; *Jefferis v. East Omaha Land Co., supra.* "Every conveyance of real estate shall pass all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." Comp. St. 1929, sec. 76-106. See *Carr v. Miller,* 105 Neb. 623, 181 N. W. 557. The rights of the state in conveying such land are measured by the same law as that of a private individual. *Bigelow v. Herrink,* 200 Ia. 830, 205 N. W. 531; 9 C. J. 181.

Having reached the foregoing conclusion, it follows that the trial court's decree is in all respects correct, and it is therefore

AFFIRMED.