ELTON SCHMIDT & SONS FARM COMPANY, A NEBRASKA CORPORATION, APPELLEE, v. JOSEPH A. KNEIB, APPELLANT.

507 N.W.2d 305

Filed September 14, 1993.   No. A-91-976.

Paul J. Peter, of Bruckner, O'Gara, Keating, Hendry, Davis & Nedved, P.C., for appellant.

Arnold E. Wullschleger, of Everson, Wullschleger, Sutter, Korslund & Willet, for appellee.

CONNOLLY, MILLER-LERMAN, and WRIGHT, Judges.

CONNOLLY, Judge.

This appeal is from a quiet title action in which the district court quieted title in Elton Schmidt & Sons Farm Company (Schmidt). The property involved is a railroad corridor, approximately 120 feet wide, which runs through the "Northeast Quarter (NE 1/4) of Section Thirty-six (36), Township Three (3) North of Range Three (3) East of the 6th P.M., Jefferson County, Nebraska." Joseph A. Kneib has appealed the district court's judgment. We reverse, and remand with directions.

## BACKGROUND

On or about June 29, 1898, the Chicago, Rock Island & Pacific Railway Company (Chicago Railway) purchased the corridor and received a warranty deed for the property from the grantors, Peter and Gertrude Jansen. On March 1, 1986, Kneib purchased the corridor of land and received a quitclaim deed from Chicago Railway's successor, the Chicago Pacific Corporation (Chicago Pacific).

The railroad corridor in question is abutted on both sides by real estate owned by Schmidt. Schmidt alleged in its quiet title action that Chicago Railway had attained a mere easement from the original grantors in 1898, which easement was

effectively extinguished once Chicago Railway was granted permission by the Interstate Commerce Commission to abandon the corridor in 1979. Kneib counterclaimed, asserting that Chicago Railway attained fee simple absolute from the Jansens and that therefore Chicago Railway's successor, Chicago Pacific, conveyed valid fee title to Kneib.

The district court found that Chicago Railway had acquired a mere easement for right-of-way purposes by deed and that the right-of-way use ceased to exist upon the abandonment of the corridor. The court also found that upon such abandonment, the property reverted to the owner of the servient estate. The court further found that Schmidt was in fact the owner of the servient estate and that Schmidt therefore acquired title to the corridor upon such abandonment.

The threshold question in this case is whether Chicago Railway obtained a fee simple or a mere easement from the Jansens, the grantors, in 1898. If the estates conveyed to Kneib's predecessor were easements, the law of Nebraska is clear that once the railroad abandons its use of such easement, title to the land contained within the right-of-way reverts to the adjoining landowner. See, *State v. Union Pacific RR. Co.*, 241 Neb. 675, 490 N.W.2d 461 (1992), *modified on other grounds* 242 Neb. 97, 490 N.W.2d 461; *Lillich v. Lowery*, 211 Neb. 757, 320 N.W.2d 463 (1982). Therefore, if all Chicago Railway obtained from the Jansens was a right-of-way, once the railroad company abandoned the right-of-way, the right-of-way would revert to Schmidt. On the other hand, if Chicago Railway obtained a fee simple title in the land from the Jansens, then its ultimate successor in interest, Kneib, would own the land in fee simple.

## ASSIGNMENTS OF ERROR

Kneib asserts that the trial court erred when it found that the warranty deed executed by the Jansens in 1898 was ambiguous, and that as a result, the court looked to the surrounding circumstances at the time the instrument was executed and determined that the instrument conveyed only an easement in the property to be used as a railroad right-of-way.

## SCOPE OF REVIEW

A quiet title action is an equity action. *Wahrman v. Wahrman*, 243 Neb. 673, 502 N.W.2d 95 (1993); *State v. Union Pacific RR. Co., supra*; *Drew v. Walkup*, 240 Neb. 946, 486 N.W.2d 187 (1992). In an equity action, an appellate court reviews the record de novo; as to questions of law, the appellate court has an obligation to reach its own independent conclusions. *Id.*

## THE DEED

On June 29, 1898, the Jansens executed a warranty deed conveying title from them to Chicago Railway. The deed provided in pertinent part:

> That Peter Jansen and Gertrude Jansen[,] his wife[,] of Jefferson County and State of Nebraska, in consideration of the sum of One 00/100 Dollars [sic] in hand paid by The Chicago, Rock Island, & Pacific Railway Company, a corporation, do hereby sell and convey unto the said Railway Company, its successors and assigns, the following-described premises, situated in the County of Jefferson, and State of Nebraska, to-wit: A strip of land one hundred and twenty-five feet wide, of which the center line of the route and line of The Chicago, Rock Island & Pacific Railway Company, as the same is now surveyed, staked, and located, is the center, being seventy-five feet on [the] south side and fifty feet on the north side of the center line of said route, over, across, and through the following-described tracts of land, as said route and line of said railway passes through the same, to-wit:

> The North East quarter (NE¼) Section Thirty-six (36) Township three (3) North of Range three (3) East.

Chicago Railway used the corridor in conjunction with other linear corridors to serve communities between Jansen and Beatrice, Nebraska. Beginning in early 1970, Chicago Railway began handling a decreasing number of cars over the track line. The railroad company suffered financial losses in 1976, 1977, and 1978. As a result of the losses, coupled with the employment of a bankruptcy restructuring plan, Chicago Railway

sought to abandon the line before the Interstate Commerce Commission. On October 6, 1979, the commission formally allowed the railroad company to abandon the trackage pursuant to federal law.

On March 1, 1986, Chicago Pacific, bankruptcy successor to Chicago Railway, conveyed the railroad corridor to Kneib by quitclaim deed. On or about November 29, 1990, Schmidt purchased by warranty deed the real estate which abutted both sides of the railroad corridor.

Schmidt acknowledged throughout the course of the litigation that Kneib asserted an ownership claim to the railroad corridor. Kneib likewise acknowledged that Schmidt had an ownership interest in the quarter section of property that abutted both sides of the railroad corridor. The issue at trial centered around the quantum of the estate Chicago Railway had purchased from the Jansens in 1898. If the railroad company acquired fee title in 1898 from the Jansens, then the corridor of land belongs in fee to Kneib pursuant to the original warranty deed to Kneib's predecessor in title. Schmidt's position is that Kneib's predecessor in title acquired a right-of-way which is an easement and which once abandoned, reverted to the owners of the land adjoining the easement.

## ANALYSIS

■ The primary rule for interpreting an instrument is that the intention of the parties as determined from the whole instrument shall govern, and only when the intention is obscure or uncertain can a court look at the surrounding circumstances. *Elrod v. Heirs, Devisees, etc.*, 156 Neb. 269, 55 N.W.2d 673 (1952). For the reasons stated below, we find that there is no ambiguity or obscurity in the language used in the warranty deed and that the intention of the parties can be determined by examining the instrument itself. The question before us, then, is what interest was conveyed by the 1898 instrument.

■ The rule of law today is the same as the law in effect at the time the conveyance was made in 1898, Comp. Stat. ch. 73, § 50 (1897). That law stated that "[e]very conveyance of real estate shall pass all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms

used." See, *Sun Oil Co. v. Emery*, 183 Neb. 793, 164 N.W.2d 644 (1969); *City of Gering v. Jones*, 175 Neb. 626, 122 N.W.2d 503 (1963). We must determine, using reasonable inferences drawn from the terms within the instrument, whether the Jansens intended to convey a fee simple to Chicago Railway or whether they intended to create a right-of-way easement.

*Granting Clause.*

■ To determine what the Jansens conveyed to Chicago Railway, we must first examine the granting clause. In *State v. Union Pacific RR. Co.*, 241 Neb. 675, 680, 490 N.W.2d 461, 465 (1992), *modified on other grounds* 242 Neb. 97, 490 N.W.2d 461, the court held that an instrument in which the grantors " ' "hereby GRANT and CONVEY unto the said Railroad Company and to their [sic] successors and assigns forever, the following piece or parcel of land" ' " contained no exceptions, reservations, or specifications for use of the land and therefore conveyed a fee simple, not an easement. In contrast, in *Bode v. Flobert Industries, Inc.*, 197 Neb. 488, 490, 249 N.W.2d 750, 752 (1977) (overruled in *Lillich v. Lowery*, 211 Neb. 757, 320 N.W.2d 463 (1982), to the extent the court determined in *Bode* that a grantor who excepts from conveyance a railroad right-of-way retains fee title to the property underlying the easement), the instrument in question conveyed to the Missouri Valley Railroad Company " 'for the purpose of constructing a railroad thereon, and for all uses and purposes connected with the construction and use of said railroad, a strip of land . . . .' " (Emphasis omitted.) The instrument's habendum clause stated that the railroad was granted the land

> "[t]o have, hold, and enjoy . . . and the right to use the said land and material of whatsoever kind within the limits of the said one hundred feet above conveyed . . . unto the said party of the second part . . . and its successors and assigns, forever, for any and all uses and purposes connected with the construction, preservation, occupation and enjoyment of said railroad."

(Emphasis omitted.) *Bode*, 197 Neb. at 490-91, 249 N.W.2d at 752. Such a clause which limits the purpose, such as for the

purpose of constructing a railroad, can be read to convey less than a fee simple. *State v. Union Pacific RR. Co., supra.*

However, in *Carr v. Miller*, 105 Neb. 623, 628, 181 N.W. 557, 559 (1921), the court found that the language " 'does hereby grant, bargain, sell, and convey unto the said Omaha Bridge and Terminal Railway Company, its successors and assigns, for terminal and railway purposes and uses, the following described real estate' " described only the use to which the land was to be put. The *Carr* court stated that "[w]e find nothing in the words, 'for terminal and railway purposes and uses,' which indicates that the grantor intended to reserve in itself any interest whatsoever in the land granted." *Id.* at 632, 181 N.W. at 560. As in *Union Pacific RR. Co.*, in the case at hand, the instrument's granting clause makes no exceptions, reservations, or specifications for use of the land conveyed. No conditions are placed upon the property. The granting clause appears to convey a fee simple.

█ The paragraph following the description clause, in which Chicago Railway acquired the right to erect and maintain snow fences "on the lands now owned by said grantor or grantors not more than two hundred feet north or west of the center line of said railroad," *does* describe an easement, *off* the conveyed land. The easement contains conditions and limits as follows:

> at any and all times between the first day of November and the fifteenth day of March of each year, erect and maintain snow fences . . . and may remove such snow fences at pleasure; but shall only suffer them to remain on the lands of such grantor or grantors during the time herein limited.

It appears that the grantors knew how to create an easement, as they did so within the instrument when they conveyed a snow fence easement on property on either side of the strip conveyed. The intent statute in effect at the time of the conveyance stated that unless the terms state otherwise, all conveyances of real estate passed on the entire interest of the grantor. See Comp. Stat. ch. 73, § 50 (1897). A grantor is charged with knowledge of the intent statute, and if he desires to create a mere easement or to convey a determinable fee, he can easily use appropriate language for this purpose. *Sun Oil Co. v. Emery*, 183 Neb. 793,

164 N.W.2d 644 (1969). The Jansens did use appropriate language for the purpose of creating a snow fence easement. If they desired to convey less than a fee simple in the strip conveyed in the instrument, the Jansens knew how to do it.

*Consideration.*

Schmidt claims that the consideration rendered for conveyance of the strip of property, namely $1, renders the instrument ambiguous and establishes the granting of an easement. While nominal monetary consideration may be given in a deed, "other good and valuable consideration may exist as well." *Coleman v. Missouri Pac. R.R.*, 294 Ark. 633, 638, 745 S.W.2d 622, 625 (1988). The *Coleman* court found that other valuable consideration to the grantors could have been the benefits to the abutting landowners in 1902 of the building of a railroad. The court concluded that the recited nominal consideration in the deed in question was not enough to suggest that the grantors intended only a right-of-way conveyance. Similar benefits could have enured to the Jansens in 1898. We find that nominal monetary consideration, alone, does not make the instrument ambiguous, nor does it create an easement.

*Description Clause.*

Schmidt argues that because the conveyed premises is described as a "strip of land" located where the Chicago Railway tracks ran "over, across, and through" a tract of land, the Jansens intended to grant only an easement to Chicago Railway. In the event of repugnancy and inconsistency between the granting, habendum, and description clauses of a deed, the granting clause will prevail. *City of Gering v. Jones*, 175 Neb. 626, 122 N.W.2d 503 (1963). In *City of Gering*, the description clause in the instrument at issue described the location of the premises conveyed, which description was followed by a phrase stating that the property was " 'to be used for the use and benefit of the Citizens of the said City of Gering, Nebraska.' " *Id.* at 627, 122 N.W.2d at 505. The court found that both the granting and habendum clauses were without limitation and, further, that there was no conflict between the description clause and the granting and habendum clauses, as the

description merely directed the city to do what it was created to do: benefit its citizens. Therefore, the court found that the instrument in question conveyed a fee simple absolute in the city of Gering. See, also, *Carr v. Miller*, 105 Neb. 623, 181 N.W. 557 (1921). We find that the description of a strip of land, located where railroad tracks run across, over, and through a tract of land, simply describes where the land conveyed was located. Such language does not create ambiguity, nor does it create an easement.

### Covenant to Warrant.

After the clause which created an easement for snow fences, the Jansens covenanted good and perfect title and "covenant[ed] to warrant and defend the said premises against the lawful claims of all persons whomsoever." In *Meyerink v. Northwestern Public Service Co.*, 391 N.W.2d 180, 182 (S.D. 1986), the instrument at issue was entitled "right-of-way deed," but contained a clause in which the grantors promised to " 'forever Warrant and Defend the title to the premises hereby conveyed. . . .' " The court found that "[t]hat is clearly the language of a conveyance in fee or, more specifically, a warranty deed. [Citation omitted.] Easements are not so phrased. No ambiguity exists and we need not further examine the intention of the parties, consideration given, or circumstances at the time of execution." *Id.* at 182-83. We find that a conveyance in which the grantors covenant to warrant and defend title to the premises is the language used to convey a fee simple, that the instrument is not ambiguous, and that from the language used in the instrument, the Jansens intended to convey a warranty deed to Chicago Railway.

### Dower.

Finally, at the end of the instrument, Gertrude Jansen relinquished her right of dower to the premises. Under Comp. Stat. ch. 73, § 43 (1897), a married woman, "[t]o convey her right of dower . . . must execute a deed with or without her husband." A right-of-way is an easement, not a title, and can be conveyed without the relinquishment of dower rights of a wife. *Coleman v. Missouri Pac. R.R.*, 294 Ark. 633, 745 S.W.2d 622 (1988). Therefore, we can infer that because Gertrude Jansen

relinquished her dower rights, the Jansens intended to convey fee simple title to the property, rather than an easement.

## CONCLUSION

In sum, we find that the intention of the parties, when one examines the whole instrument, is neither ambiguous nor obscure. The Jansens intended to grant a fee simple to Chicago Railway. Kneib, as Chicago Railway's successor in interest, owns the railroad corridor in question in fee simple. Therefore, we reverse the judgment of the trial court and remand the cause with directions that the trial court enter a judgment in conformity with the opinion herein.

REVERSED AND REMANDED WITH DIRECTIONS.