2015 ND 187

EOG RESOURCES, INC., a Delaware Corporation, Plaintiff and Appellee

v.

SOO LINE RAILROAD COMPANY, d/b/a Canadian Pacific Railway, successor in interest to Minneapolis, St. Paul & Sault Ste. Marie Railway Company; G–4 LLC, Defendants, Third–Party Plaintiffs, and Appellants.

and

Jeannette E. Gere; Lori Whitten; Kim Rachford; Skaar–Risan, LLLP; Linda G. Johnson; Joel D. Johnson; and Whiting Oil and Gas Corporation, Defendants and Third Party Plaintiffs

v.

Ralph A. Brendle, as Trustee of the Ralph A. Brendle Trust, Ralph A. Brendle Living Trust, Brendle Family LLLP, Arlene Sherven, Todd Sherven, Rick Sherven, Gladys Kirton, Alan L. Loen, AgriBank, FCB, Wallace L. Nelson and Mary Ann Nelson, individually, and as Trustees of the Nelson Family Trust, UDT 1/10/92, Cynthia M. Roberts a/k/a Cynthia Roberts, Jeannette E. Gere, Lori Whitten, Kim Rachford, Linda G. Johnson, Joel D. Johnson, Michael Johnson Trust, A.G. Andrikopoulos, AgriBank, FCB, Solomonson Family Mineral Trust, Donna and Jerry Lyon, David and Doreene Pusc, Michael and Lorna Pusc, Steven and Collette Pusc, Diana and Frank Wollschlager, Panther Creek (James Simmons, Presco, Inc., Fred and Joyce Evans, Paladin Resources, Inc.), Dean and Sharon Solomonson, Richard W. Frazier, 1477521 Alberta Ltd, Donald Nelson, Karolyn Nelson, Timothy Nelson, John Zimmerman, Thomas Miller Gordon, Robert Crawford, and all other persons unknown and claiming any estate or interest in or lien or encumbrance upon the property described in the Cross–Claim of the Defendant G–4, LLC, Third–Party Defendants,

and

Roger Wollschlager and Amanda Olson, as Trustees of the Betsy Amanda Wollschlager Trust, Solveigm Swendsend, Roger Stenerson, Joan Stenerson, Cynthia M. Roberts, Lovila Krueger, Herbert Krueger, Roger Wollschlager, as Trustee of the Wollschlager Irrevocable Trust, Risan Limited Partnership, State of North Dakota, Thomas T. Ritter, John D. Larue, as Trustee of the Stamford Minerals Organization, Roger Wollschlager and Blane Wollschlager, individually, and as Co–Trustees of the Betsy Amanda "Betty" Wollschlager Irrevocable Trust, Skaar–Risan LLLP, Whiting Oil and Gas Corporation, Berry Ventures, Henry and Lorie Gordon, A.G Andrikopoulos Resources, Inc., Alicia Johnson, Mark Johnson, Wollschlager Irrevocable Mineral Trust, Ryan Family Mineral Trust, Kootenani Resources, Strata Resources, Michael S. Johnson Management One LLC, Michael S. Johnson Management Two LLC, Third–Party Defendants and Appellees,

G–4, LLC, Appellant.

No. 20140122.

Supreme Court of North Dakota.

July 15, 2015.

Joseph J. Cassioppi (argued), Minneapolis, Lawrence Bender (appeared) and Danielle M. Krause (on brief), Bismarck, N.D., for plaintiff and appellee EOG Resources, Inc., a Delaware Corporation and third-party defendants Berry Ventures, Inc., Strata Resources Inc., Michael S. Johnson Management One LLC, Michael S. Johnson Management Two LLC, Mark Johnson, Alicia Johnson, Henry Gordon, Lori Gordon, A.G. Andrikopoulos Resources, Inc., Ryan Family Mineral Partnership, and Kootenani Resources.

Janilyn K. Murtha (argued), Assistant Attorney General, Office of Attorney General, Bismarck, N.D., and Hope Lisa Hogan (on brief), Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for third-party defendant and appellee State of North Dakota.

Richard P. Olson (on brief) and Andrew T. Forward (on brief), Minot, N.D., for appellee Skaar–Risan LLLP, and third-party defendants and appellees Risan Limited Partnership, Solveig Swendseid, Roger Stenerson, Joan Stenerson, Cynthia M. Roberts, Lovila Krueger, Herbert Krueger, John D. Larue as Trustee of the Stamford Minerals Organization and Thomas T. Ritter.

Michael J. Maus (on brief), N.D., and Christina M. Wenko (on brief), Dickinson, N.D., for third-party defendants and appellees Roger Wollschlager and Amanda Olson, as trustees of the Betsy Amanda Wollschlager trust; Roger Wollschlager, as trustee of the Wollschlager Irrevocable trust; Roger Wollschlager and Blane Wollschlager, individually and as co-trustees of the Betsy Amanda "Betty" Wollschlager irrevocable trust; and the Wollschlager irrevocable mineral trust.

Amy M. Oster (on brief) and Brian R. Bjella (on brief), Bismarck, N.D., for Whiting Oil and Gas Corporation.

Jon R. Brakke (argued) and Whitney M. Irish (on brief), Fargo, N.D., for appellant G–4, LLC.

Donald T. Campbell (argued) and Nathan E. Endrud (appeared), Minneapolis, Minn., for defendant, third-party plaintiff and appellant Soo Line Railroad Company, d/b/a Canadian Pacific Railway, successor in interest to Minneapolis, St. Paul & Sault Ste Marie Railway Company.

Michael C. McCarthy and Jesse D. Mondry, Minneapolis, Minn., for amicus curiae BNSF Railway Company.

McEVERS, Justice.

[¶ 1] Soo Line Railroad Company and G–4, LLC appeal from a summary judgment declaring Soo Line does not own an interest in the minerals in and under certain Mountrail County property and G–4 does not hold a valid leasehold interest in the property. Soo Line and G–4 argue the district court erred in finding seven private deeds conveyed only easements and not a fee simple title to Soo Line's predecessor-in-interest. We reverse and remand.

I

[¶ 2] EOG Resources, Inc. has an interest in an oil and gas leasehold estate in Mountrail County and operates oil and gas wells. Soo Line is a railroad operating in North Dakota. G–4 has oil and gas exploration leases with Soo Line.

[¶ 3] EOG brought an action to quiet title to minerals in and under certain Mountrail County property against Soo Line, G–4, and other defendants claiming an interest in the property. EOG sought a declaration that Soo Line and G–4 have no interest in the minerals in and under the disputed property.

[¶ 4] Soo Line answered and brought counterclaims against EOG and cross-claims against the other defendants. Soo Line alleged it obtained a fee simple title to the surface and minerals in the disputed property through a deed executed in 1914 by Henry Olson conveying a legal interest in the property to Soo Line's predecessor in interest, Minneapolis, St. Paul & Sault Ste. Marie Railway Company. Soo Line requested a judgment quieting title and declaring Soo Line is the fee simple owner of the property and recognizing G–4's leasehold interests in the property.

[¶ 5] G–4 filed a separate answer and brought counterclaims against EOG and crossclaims against the other defendants. G–4 requested the court also quiet title to the mineral interests in and under fifteen additional tracts of land. G–4 alleged Soo Line obtained a fee simple title to the surface and minerals in the original disputed property as well as fifteen additional tracts of land in Mountrail County through conveyances under the March 2, 1899 Act of Congress, a condemnation order, and seven deeds. The seven deeds were executed in 1914, 1915, and 1916 by Henry Olson, William and Lu Blatt, Dewar and Rose Grant, Hans and Thea Larson, Olaf and Dina Faro, Joy Kline, and John and Inger Trana conveying an interest in certain property to Soo Line's predecessor in interest. The parties did not argue these deeds were involuntary and there is no evidence in the record indicating the deeds were made in lieu of condemnation. G–4 sought to quiet title and requested a judgment declaring Soo Line is the fee simple owner of all of the Mountrail County property in dispute and G–4 has a leasehold interest in the property. Soo Line filed an answer to G–4's cross-claims and requested a judgment quieting title and declaring it is the fee owner of the Mountrail County property, including the original disputed property and the fifteen additional tracts of land, and recognizing G–4's leasehold interest in the property.

[¶ 6] The other defendants filed separate answers to EOG's complaint and Soo Line and G–4's cross-claims, aligning with EOG. They requested the court declare Soo Line and G–4 have no interest in the minerals in and under the disputed property.

[¶ 7] G–4 and Soo Line moved for partial summary judgment on the interests conveyed under the condemnation order and private deeds. EOG also moved for summary judgment, arguing judgment should be entered in its favor because the railroad acquired only an easement under the 1899 Act, the condemnation order, and the deeds. Soo Line and G–4 responded and stipulated that the railroad acquired only an easement under the 1899 Act.

[¶ 8] After a hearing and based on the parties' stipulation, the district court partially granted EOG's motion for summary judgment and dismissed G–4's claims related to the 1899 Act. The district court deferred ruling on the motions for summary judgment on the remaining claims until all record owners with potential claims related to the mineral interests for all of the disputed property were joined to the proceeding.

[¶ 9] G–4 filed an amended counterclaim and cross-claim adding numerous third-party defendants with potential claims to the mineral interests. The third-party defendants filed answers to G–4's amended counterclaim and cross-claim.

[¶ 10] Soo Line and G–4 moved for summary judgment, requesting the district court quiet title to the remaining disputed property in Soo Line's favor, and declare that Soo Line owns a fee simple interest in the surface and minerals in the property conveyed by the seven deeds and the condemnation order and that G–4 has a valid

leasehold interest in the mineral interests by way of an oil and gas lease with Soo Line. Soo Line and G–4 argued the deeds are unambiguous and convey a fee simple interest to the railroad as a matter of law, and the court should find Soo Line owns the condemned property in fee simple because the condemnation order expressly conveyed the property to Soo Line in "fee simple."

[¶ 11] EOG and several third-party defendants (collectively "EOG parties") also moved for summary judgment, requesting the district court quiet title in their favor and declare Soo Line owns only an easement across the surface of the remaining disputed property. The EOG parties argued they were entitled to summary judgment as a matter of law, the railroad acquired only an easement under the seven deeds and condemnation order, Soo Line does not own the minerals in and under its railroad right of way, and G–4 did not acquire a leasehold interest in the minerals through its oil and gas lease with Soo Line.

[¶ 12] After a hearing on the motion, the district court denied Soo Line and G–4's motions for summary judgment and granted the EOG parties' motion for summary judgment. The court concluded the condemnation order granted Soo Line an easement over and across the property. The court also concluded the private deeds conveyed only an easement to Soo Line's predecessor-in-interest. The court found there were no material facts in dispute and the deeds were more indicative of a grant of an easement than of fee simple title based on the case law the parties cited in support of their arguments. The court found all of the deeds include language that is consistent with a grant of fee simple title because they all include the same granting, warranty, and habendum clauses, but the language was not necessarily conclusive of a grant of fee title. The court found that each of the deeds included the phrase "right of way" in the title and the inclusion of that language creates an uncertainty about what the grantors intended to convey. The court considered other factors in determining the deeds conveyed an easement, including the size and shape of the conveyed interest, the purpose of the conveyance, a provision in the deeds releasing the railroads from certain claims for damages, and extrinsic evidence. A judgment was subsequently entered.

## II

[¶ 13] The standard for reviewing summary judgments is well established:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Hamilton v. Woll*, 2012 ND 238, ¶ 9, 823 N.W.2d 754 (quoting *Wenco v. EOG Res., Inc.*, 2012 ND 219, ¶ 8, 822 N.W.2d 701). Summary judgment may not be granted if reasonable differences of opinion exist about the inferences to be drawn from the undisputed facts. *Hamilton*, at ¶ 9. Issues of fact become issues of law when reasonable persons can reach only one conclusion from the facts. *Id.*

### III

[¶ 14] Soo Line and G–4 argue the district court erred in granting summary judgment and concluding the seven deeds conveyed only an easement. Soo Line and G–4 contend all seven deeds unambiguously conveyed a fee simple interest to Soo Line's predecessor in interest. Soo Line and G–4 do not argue the district court erred in finding the railroad acquired only an easement through the condemnation order.

[¶ 15] We interpret deeds in the same manner as we interpret contracts. N.D.C.C. § 47–09–11. The primary purpose in interpreting a deed is to ascertain and effectuate the grantor's intent. *Wagner v. Crossland Constr. Co., Inc.*, 2013 ND 219, ¶ 8, 840 N.W.2d 81. The intent must be ascertained from the writing alone, if possible. *Id.* When a deed is unambiguous we determine the parties' intent from the instrument itself. *Id.* A deed is ambiguous if rational arguments can be made in support of contrary positions as to the meaning of the term, phrase, or clause in question. *See In re Estate of Dionne*, 2009 ND 172, ¶ 16, 772 N.W.2d 891. Whether a deed is ambiguous is a question of law, which is fully reviewable on appeal. *Wagner*, at ¶ 8.

[¶ 16] If a deed is ambiguous, the court may consider extrinsic evidence to determine the parties' intent. *Dionne*, at ¶ 16. Resolution of an ambiguity in a deed by extrinsic evidence is a finding of fact, reviewed under the clearly erroneous standard. *See Rolla v. Tank*, 2013 ND 175, ¶ 5, 837 N.W.2d 907. Generally, summary judgment is not appropriate if the deed is ambiguous and reasonable differences of opinion exist as to the interpretation of a deed. *Cf. Hillerson v. Bismarck Pub. Sch.*, 2013 ND 193, ¶ 17, 840 N.W.2d 65 (interpretation of terms of a contract).

### A. *Lalim*

[¶ 17] The EOG parties argue this Court's decision in *Lalim v. Williams Cnty.*, 105 N.W.2d 339 (N.D.1960), sets the standard for interpreting the deeds in this case. They claim the Court's analysis in *Lalim* should be applied in this case and compels the conclusion that the deeds conveyed only an easement to the railroad.

[¶ 18] In *Lalim*, 105 N.W.2d at 342, this Court considered whether the county acquired an easement or a fee simple interest in certain land used for highway purposes. The deed at issue was "a warranty deed purporting to grant, bargain, sell and convey to [the county], its successors and assigns forever, 'all that tract or parcel of land and real estate'" described as a strip of land 40 feet wide adjacent to the section line, "excepting all that portion lying within 33 ft. of the section line." *Id.* at 342. The deed's property description also referred to the property being shown and marked on a plat, which was a blueprint "right of way plat" filed for record in the county register of deeds office. *Id.* at 342–43. The deed contained a habendum clause and a provision stating the grantors "do covenant with the party of the second part, its heirs and assigns, that they are well seized in fee of land, real estate and premises aforesaid, and have good right to sell and convey the same in manner and form aforesaid[.]" *Id.* at 343.

[¶ 19] This Court held the grantors retained a fee simple interest in the 33 foot strips under the highway because the State received only an easement for the 33 foot strips under a statute and that land was excepted from the deed. *Id.* at 344. The Court held the deed conveying the seven-foot strips conveyed only an easement. *Id.* at 347. The court explained the deed on its face was a grant and a fee simple title was presumed to be intended to pass by a grant of real property under N.D.R.C. § 47–1013 (1943), but the presumption was not conclusive. *Id.* at 344. The Court examined the deed and noted that it conveyed seven-foot strips of land lying adjacent to an easement for highway purposes, which was located over land the grantors owned in fee simple and which the grantors excepted and retained. *Id.* at 345. The Court also considered that the deed showed the strips of land were part of a federal aid project and were shown on a plat, the plat was of record when the deed was given, the plat contained the descriptions of the parcels that were set forth in the deed and showed the seven-foot strips were additions to the right of way for the highway already established. *Id.* This Court concluded the deed and the plat created an ambiguity. *Id.* The Court looked at other factors to determine the parties' intent, including the general rule that the right the public acquires in land for highway purposes is ordinarily an easement, the county would have acquired an easement if it had taken the land under the power of eminent domain, and the meaning of the word "land" as it was used in the deed may include any estate or interest in land. *Id.* at 346. The Court concluded the deed conveyed an easement to the county, explaining:

> [T]he deed to [the county] when considered with the plat to which it refers is sufficiently ambiguous to permit of judicial construction. The purpose of the conveyance was to widen by seven feet the right of way for a highway over the grantors' land, which right of way consisted of an easement over strips of land 33 feet wide lying adjacent to section lines, to which strips the grantors owned the fee title as a part of their title to larger tracts adjacent to the highway. The deed by its terms excepts the fee title of the 33–foot strips. If construed to convey a fee title to the 7–foot strips, they would completely divide the grantors' fee to the 33–foot strips from their fee title to the larger tracts of which all of the strips were originally a part.

*Id.* at 346–47.

[¶ 20] This case is different from *Lalim.* The deed in *Lalim* was between a private party and the government related to a highway for the public's use. In this case, the deed is between a private party and a company and is related to the construction and operation of a railroad for the company's use. Moreover, the seven deeds in this case do not contain the same language as the deed in *Lalim.* *Lalim* does not compel this Court to hold all of the deeds in this case conveyed only an easement to the railroad.

[¶ 21] All of the deeds are on pre-printed forms, containing similar provisions. Each deed contains additional typewritten information, including the grantor's name, the consideration given, the county and state where the property was located, and the specific description of the property. Some of the deeds also include additional provisions typewritten onto the printed form. Although the deeds are all similar, they do not reference each other and we must consider the language of each deed separately to determine whether the deed is ambiguous. *See Nichols v. Goughnour,* 2012 ND 178, ¶ 14, 820 N.W.2d 740. The parties' intent must be ascertained from the writing alone, and if the deed is unam-

biguous we will not consider extrinsic evidence and will determine the parties' intent from the deed itself. *Wagner*, 2013 ND 219, ¶ 8, 840 N.W.2d 81.

### B. Grant, Olson, Blatt, Kline, and Trana Deeds

[¶ 22] The Grant, Olson, Blatt, Kline, and Trana deeds are all very similar and contain most of the same provisions using identical language. All of the deeds are titled "WARRANTY DEED—RIGHT OF WAY" and provide:

> [The named grantors] of [County of Mountrail State of North Dakota] parties of the first part, for and in consideration of the sum of [a stated dollar amount], to them in hand paid by the Minneapolis, St. Paul & Sault Ste. Marie Railway Company, party of the second part, the receipt whereof is hereby acknowledged, do hereby GRANT, BARGAIN, SELL and CONVEY unto the said party of the second part, its successors and assigns, a piece, parcel or tract of land, situated in the [County of Mountrail and State of North Dakota] described as follows, to-wit:
>
> [property description]
>
> . . . .
>
> To have and to hold the same, Together with all the appurtenances thereunto belonging to the said party of the second part, its successors and assigns, FOREVER.
>
> And the said parties of the first part hereby grant unto the said party of the second part, its successors and assigns, the right to protect its railway, on said land, by erecting on both sides thereof and within one hundred and fifty feet from the centre [sic] line of said railway, portable snow fences; *provided however*, that such fences shall not be erected before the 15th day of October of each year and shall be removed on or before the 1st day of April of the year next ensuing their erection.
>
> And the said [grantors] for themselves, their heirs, executors and administrators, do convenant with the party of the second part, its successors and assigns, that they are well seized in fee of the lands and premises aforesaid; that the same are free from all incumbrances whatsoever and the above granted lands and premises in the quiet enjoyment and peaceable possession of the said party of the second part, its successors and assigns, against all persons lawfully claiming or to claim the whole or any part thereof, the said parties of the first part will forever WARRANT and DEFEND.
>
> And the said parties of the first part, for themselves, their heirs, administrators and assigns, do release the party of the second part, its successors and assigns, from all claims from any and all damages resulting to the lands through and across which the piece or strip of land hereby conveyed is located, by reason of the location, grade, construction, maintenance, and operation of a railway over and upon the premises hereby conveyed.

Each deed specifically describes the property conveyed, including that the conveyed property is parallel with and either 50, 75, or 125 feet distant from the center line of the main track of the railroad.

[¶ 23] Soo Line and G–4 argue the plain language of the granting, habendum, and warranty clauses demonstrate an unambiguous intent to convey fee simple interests. They contend the granting clause conveys an absolute interest in "land," without exception or limitation, and the habendum and warranty clauses are equally absolute.

[¶ 24] "[T]he specific language of the granting clause of the deed controls the interests the grantor purport-

ed to give the grantee." *Waldock v. Amber Harvest Corp.*, 2012 ND 180, ¶ 10, 820 N.W.2d 755. A deed that conveys a strip, piece, parcel, or tract of land generally indicates an intent to convey a fee simple title. *See, e.g., Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 532 (8th Cir.2005); *Elton Schmidt & Sons Farm Co. v. Kneib*, 2 Neb.App. 12, 507 N.W.2d 305, 307 (1993); *see also* 65 Am. Jur. 2d *Railroads* § 45 (2015). A deed that conveys a "right" or "right of way" generally indicates an intent to convey an easement. *See Bockelman*, at 531–32; *Haggart v. United States*, 108 Fed.Cl. 70, 87 (2012) (applying Washington law); see *also Riverwood Commercial Park, LLC v. Standard Oil Co., Inc.*, 2005 ND 118, ¶¶ 10–11, 698 N.W.2d 478 (easements grant a right or permission to use or control land for a specific, limited purpose); 65 Am. Jur. 2d *Railroads* § 45 (2015). A deed that limits the use of the parcel to railroad purposes also indicates an intent to convey an easement. *Bockelman*, at 531–32; *Schmitt v. United States*, 203 F.R.D. 387, 399 (S.D.Ind.2001). "As a general rule, conveyances to railroads that purport to grant and convey a strip, piece, parcel, or tract of 'land,' and do not contain additional language relating to the use or purpose to which the land is to be put, or in other ways cut down or limit, directly or indirectly, the estate conveyed, are usually construed as passing an estate in fee." 65 Am. Jur. 2d *Railroads* § 45 (2015).

[¶ 25] In this case, the deeds state the grantor grants, bargains, sells, and conveys "a piece, parcel, or tract of land." The granting clause does not limit the use of the land to railroad purposes or contain any other limitations. The granting clause is not ambiguous and it indicates an intent to convey a fee simple interest. *Cf. Bockelman*, 403 F.3d at 532 (deed uses the term "strip of land" and does not limit the use of the land to rail-

road purposes, which indicate the conveyance of a fee simple absolute); *Whispell Foreign Cars, Inc. v. United States*, 97 Fed.Cl. 324, 334–37 (2011) (deed conveyed fee simple when it conveyed land, warrants title, and contains no limitations on use of land); *Union Pac. R.R. Co. v. Ethington Family Trust*, 137 Idaho 435, 50 P.3d 450, 453 (2002); *Bailey v. Town of Saltville*, 279 Va. 627, 691 S.E.2d 491, 494 (2010). "A fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended." N.D.C.C. § 47–10–13; *see also* N.D. Compiled Laws § 5527 (1913) (law in effect at the time the deeds were signed, contains the same language as N.D.C.C. § 47–10–13).

[¶ 26] The habendum and warranty clauses also support Soo Line and G–4's contention that the deeds conveyed a fee simple interest. A habendum clause defines the duration or extent of the grantee's interest and may limit the interest conveyed in the granting clause. *See Egeland v. Continental Res., Inc.*, 2000 ND 169, ¶ 3 n. 1, 616 N.W.2d 861; *Harney v. Wirtz*, 30 N.D. 292, 152 N.W. 803, 807 (1915); 23 Am. Jur. 2d *Deeds* § 16 (2015). Here, the habendum clause states, "To have and to hold the same, Together with all the appurtenances thereunto belonging to the said party of the second part, its successors and assigns, FOREVER." Other courts have held the use of similar language is evidence of an intent to convey a fee simple. *See Bockelman*, 403 F.3d at 532; *Poznic v. Porter Cnty. Dev. Corp.*, 779 N.E.2d 1185, 1191 (Ind.Ct.App.2002); 65 Am. Jur. 2d *Railroads* § 45 (2015). The habendum clause in these deeds does not contain any exceptions or reservations or limit the conveyance, either in duration or any other way. Each deed also contains a warranty clause, which warrants a clear title and uses warranty deed lan-

guage, and is illustrative of an intent to convey a fee simple title. *See Whispell,* 97 Fed.Cl. at 337; *Elton Schmidt,* 507 N.W.2d at 309; *Bailey,* 691 S.E.2d at 494; *see also* 20 Am. Jur. 2d *Covenants, Etc.* § 58. The habendum and warranty clauses do not modify or limit the granting clause.

[¶ 27] Other courts that have construed deeds containing similar granting, habendum, and warranty clauses have held the deed conveyed a fee simple title. *See Hubbert v. United States,* 58 Fed.Cl. 613, 616 (2003); *Poznic,* 779 N.E.2d at 1189–92. These provisions of the deeds indicate the parties intended the deeds to convey a fee simple title. However, " '[t]he parties' intent must be ascertained from the entire instrument, and every clause, sentence, and provision should be given effect consistent with the main ·purpose of the [deed].' " *Valley Honey Co., LLC v. Graves,* 2003 ND 125, ¶ 12, 666 N.W.2d 453 (quoting *U.S. Bank v. Koenig,* 2002 ND 137, ¶ 8, 650 N.W.2d 820). We must also consider the other provisions of each deed.

[¶ 28] The EOG parties contend the deeds are ambiguous because the title of the deeds contains the phrase "right of way." They argue that a deed referencing the use of the property for a railroad right of way is generally construed to convey only an easement.

[¶ 29] The phrase "right of way" has two meanings when it is used in a railroad deed; it refers either to the strip of land upon which the track is laid or the legal right to use the strip of land. *See, e.g., Hubbert,* 58 Fed.Cl. at 615 (applying Missouri case law); *State v. Hess,* 684 N.W.2d 414, 424 (Minn.2004); *Brown v. State,* 130 Wash.2d 430, 924 P.2d 908, 914 (1996). When the phrase is included in the granting clause limiting the estate conveyed or specifying the purpose of the grant, courts have often held the use of the

language supports finding an easement was conveyed. *See Hubbert,* at 615–16; *Diaz v. Home Fed. Sav. & Loan Ass'n of Elgin,* 337 Ill.App.3d 722, 272 Ill.Dec. 199, 786 N.E.2d 1033, 1042 (2002); *Brown,* at 913. However, when the phrase is included only in the title or caption of the deed, courts have generally held it is not a significant factor in determining whether the deed conveys an easement or a fee simple interest. *See Haggart,* 108 Fed.Cl. at 94 (use of the words "Right of Way Deeds" in the caption, alone, was not sufficient to indicate an easement was conveyed); *Brown,* at 915 (deed captioned "Right of Way Deed" conveyed a fee simple title regardless of the caption because the purpose of the conveyance was not limited). Moreover, this Court has said when there is a conflict between provisions of a deed, the specific provision qualifies the general provision, and "a caption on a deed 'is of no effect where the conveyance is clear.' " *Rolla,* 2013 ND 175, ¶ 7, 837 N.W.2d 907 (quoting *Clark v. CSX Transp., Inc.,* 737 N.E.2d 752, 763 (Ind.Ct.App.2000)). Although the deeds contain the phrase "right of way" in the title, use in the title alone is not sufficient to create ambiguity and it is of no effect when the conveyance is clear.

[¶ 30] Each of the deeds contains a provision granting the railroad the right to erect snow fences within 150 feet from the center line of the railway. None of the deeds convey property more than 125 feet from the center line of the railway. This provision creates an easement granting the railroad a right to erect and maintain snow fences on lands the grantors own that were not included in the property conveyed. This provision shows the parties knew the appropriate language to use to create an easement, which indicates the grantors intended to convey a fee simple interest in the disputed property. *See*

*Hess,* 684 N.W.2d at 425; *Elton Schmidt,* 507 N.W.2d at 308.

[¶ 31] Citing *Brookbank v. Benedum–Trees Oil Co.,* 389 Pa. 151, 131 A.2d 103 (1957), the EOG parties argue the deeds contain a release provision which creates an ambiguity and supports their claim that the deeds convey an easement. They claim a deed that releases the grantee from liability for damage to land generally conveys less than a fee simple title.

[¶ 32] In *Brookbank,* the court considered the language of a written agreement between the landowner and the railroad company to determine what interest the railroad company had in the minerals under an abandoned railroad bed. The agreement included a release provision, stating:

> Together with the right to enter upon the said land and lay out, construct, maintain and operate a railroad over and across the lands belonging to the parties above mentioned, taking and using such earth, stones and gravel, as may be needed for grading and filling such road, and hereby fully releasing said railroad company, its successors and assigns, from all liability by reason of the location, construction and operation of the said railroad.

*Brookbank,* 131 A.2d at 106. The court said the language in this provision gave the railroad rights that naturally and lawfully arise from ownership of land in fee simple and therefore the provision would be surplusage if the parties intended the railroad receive a fee in the land. *Id.* at 110. The court noted the railroad would have the right to locate, construct, and operate a railroad over the land if it had been given a fee interest in the land and said, "The only situation where any liability might accrue to the railroad from the location, construction and operation over this land would be in the event the railroad

secured simply a 'right of way' over the land." *Id.* The court held the railroad acquired a "right of way" for railroad purposes under the agreement and the railroad's rights ceased and reverted to the owner of the fee when the strip of land involved ceased to be used for railroad purposes. *Id.* at 111–12.

[¶ 33] The release language included in the deeds in this case is significantly different from the release provision in *Brookbank.* In this case, the provision releases the railroad from liability "from all claims from any and all damages resulting to the lands through and across which the piece or strip of land hereby conveyed is located. . . ." The railroad is released from liability to the lands "through and across" which the land conveyed is located. The phrase "through and across" is used to describe the location and identify the land the release refers to. *See Kynerd v. Hulen,* 5 F.2d 160, 162 (5th Cir.1925) (use of the words "over" and "through" does not indicate an intent to convey an easement, use was descriptive); *Tazian v. Cline,* 686 N.E.2d 95, 99 (Ind.1997) (deed does not contain any language in the granting clause limiting the use or purposes of the land and use of the phrase "over, across and through" was descriptive). The phrase describes the land adjacent to the conveyed land. The provision releases the railroad from claims of damages to land adjacent to the conveyed land that the grantor continued to own. It does not release the railroad from claims for damages to the land being conveyed in the deed. Unlike the release provision in *Brookbank,* the release in this case does not support an interpretation of the deeds conveying only an easement. *Cf. Turner v. Unknown Claimants of Land in Sec. 4, 87 North Twp., Range 32 West of 5th Principal Meridian,* 207 N.W.2d 544, 546 (Iowa 1973) (holding deed conveyed fee simple

and provision stating grantor "releases all damages to his other lands by reason of constructing, operating, and maintaining a railroad on said strip of land" did not create ambiguity).

[¶ 34] The Grant, Olson, and Blatt deeds also contain an additional provision releasing the railroad from any duty or obligation to establish or permit any crossing under or across its "tracks, right of way or other lands, for the use or benefit of the owners or occupants of the lands and premises now owned by the parties of the first part adjoining the second party's said railroad." Although this provision uses the phrase "right of way," it refers to the strip of land upon which the track is laid and it does not limit the interest conveyed. *Cf. Hubbert,* 58 Fed.Cl. at 615 (use of the "right of way" language provided a means to identify the relevant property and was not intended to limit the interest conveyed).

[¶ 35] The Grant, Olson, Blatt, Kline, and Trana deeds all contain the same granting clause, which conveys a piece, parcel, or tract of land and does not contain any limitations or exceptions. The property descriptions are also similar and do not contain any language that can be considered a limitation or exception. Unlike the deed in *Lalim,* these deeds do not reference a plat that may be considered to determine the parties' intent. The deeds contain the same habendum and warranty clauses, which do not contain any limitations or exceptions. The deeds also contain the same provision granting the railroad a right to erect snow fences on the grantors' property, showing the parties understood the difference between an easement and a fee simple. The deeds all contain the same language releasing the railroad from liability for damages to the grantors' adjacent property.

[¶ 36] We conclude the Grant, Olson, Blatt, Kline, and Trana deeds are unambiguous. They convey land, warrant title, and do not use any words limiting the grant, which indicates the parties' intent to convey a fee simple interest. There are no other provisions or language that creates ambiguity in the type of interest conveyed. The deeds are unambiguous and extrinsic evidence will not be considered. We conclude the Grant, Olson, Blatt, Kline, and Trana deeds conveyed a fee simple interest to the railroad. The district court erred in ruling as a matter of law that the railroad acquired only an easement under these deeds.

### C. Larson Deed

[¶ 37] Like the Grant, Olson, Blatt, Kline, and Trana deeds, the Larson deed contains the same granting, habendum, and warranty clauses, and the same provisions granting the railroad the right to erect snow fences and releasing the railroad from claims for damages to adjacent lands. However, the description of the property conveyed is different from the other deeds.

[¶ 38] The Larson deed describes the conveyed property as:

A strip, piece or parcel of land One hundred fifty (150) feet in width, the same being Seventy-five (75) feet in width on each side of the center line of the main track of the railroad of the said party of the second part, as the same is now located. . . . The strip of land One hundred (100) feet in width, Fifty (50) feet in width on each side of said track center line having been heretofore acquired by said Railway Company by the approval of its maps of definite location filed with the Department of the Interior under the Act of March 2nd, 1899.

The property description notes that the railroad had already acquired a portion of the land under the 1899 Act. The district

court determined, based on the parties' stipulation, that the railroad only acquired an easement to property under the 1899 Act.

[¶ 39] The EOG parties argue the reference to the previously obtained easement is significant and supports finding the deed conveyed only an easement. Although the property description notes the prior interest, it did not except that property from the conveyance. The property description does not create an ambiguity. Including land the railroad had already acquired an easement for in the property conveyed by the deed supports finding the parties intended the deed convey a fee simple interest. If the parties had intended to convey only an easement, it would be unnecessary to note the railroad had already obtained an easement and to include that property in the conveyance.

[¶ 40] The Larson deed also contains a second release provision, stating:

And for the consideration aforesaid the parties of the first part, for themselves, their heirs, administrators and assigns do release the said Railway Company, its successors and assigns of and from all claims for any and all damages and trespass done or committed by the Railway Company, its agents or contractors while engaged in the construction of its line of railroad over and across said Government subdivision and adjoining lands[.]

This release is similar to the other release included in all of the deeds, but it releases the railroad from all claims for any and all damages or trespass done or committed while the railroad constructed its railway. It does not create any ambiguity in the deed.

[¶ 41] The Larson deed conveys a strip, piece, or parcel of land to the railroad and includes warranty and habendum clauses. There are no other provisions or

language limiting the interest conveyed or creating ambiguity in the type of interest conveyed. We conclude the Larson deed is unambiguous and conveys a fee simple title. The district court erred in entering summary judgment to the contrary.

### D. Faro Deed

[¶ 42] The Faro deed is different from the other deeds in this case. It contains the same granting, warranty, and habendum clauses, and includes the same title and the same provisions giving the railroad the right to erect snow fences and releasing the railroad from claims for damage to adjacent property. However, the property description is materially different. The property conveyed is described as:

A strip of land one hundred fifty (150) feet in width ... which is included within two lines running parallel with and respectively seventy-five (75) feet distant Northerly and seventy-five (75) feet distant Southerly from the center line of the main track of the railroad of said party of the second part. Excepting therefrom a strip of land one hundred (100) feet in width, being fifty (50) feet in width on each side of said main track center line heretofore acquired from the United States of America by virtue of the approval of the maps of definite location of said Railway Company's railroad by the Honorable Secretary of the Interior.

[¶ 43] The EOG parties and the North Dakota Board of University & School Lands argue the deed is ambiguous and is similar to the deed in *Lalim*. Like the deed in *Lalim*, the Faro deed indicates that 100 feet of the .150 feet of property conveyed was excepted from the conveyance. The parties stipulated the railroad acquired an easement under the 1899 Act, and therefore acquired only an easement

for the 100 feet of land excepted from the conveyance. In *Lalim*, 105 N.W.2d at 345, this Court held the grantors excepted and retained the easement property under a deed using similar language. This Court also determined the shape and location of the property conveyed was significant, because the land the grantors owned in fee would be divided and cut off from other lands the grantors owned in fee if the deed was construed to convey a fee title to the county for the seven-foot strips. *Id.* at 346–47. In cases of railroad deeds, other courts have also held the size and shape of the property conveyed was a factor in determining whether the railroad acquired a fee simple interest or an easement. *See Ballard v. Louisville & N.R. Co.*, 5 S.W. 484, 486 (Ky.1887) (shape of the land conveyed contradicts the claim that the intention was to grant an easement); *Nashville, C. & S.L. Ry. v. Bell*, 162 Tenn. 661, 39 S.W.2d 1026, 1027 (1931) (the size and shape of the tract excludes any inference the property was conveyed for a right of way).

[¶ 44] Although the deed on its face conveys the property in fee simple, the property description creates ambiguity about whether the parties intended to convey a lesser estate. Because the deed is ambiguous, extrinsic evidence may be considered. Resolution of an ambiguity in a deed by extrinsic evidence is a finding of fact, reviewed under the clearly erroneous standard. *See Rolla*, 2013 ND 175, ¶ 5, 837 N.W.2d 907. The district court considered extrinsic evidence in determining the deeds conveyed only an easement, including the court's opinion that "in 1914, 1915, and 1916, mineral interests probably interested no one," which was not based on evidence in the record. Summary judgment is not appropriate if the court must draw inferences and make findings on disputed facts to support the judgment.

*Hamilton*, 2012 ND 238, ¶ 13, 823 N.W.2d 754.

[¶ 45] We agree with the district court that the Faro deed is ambiguous, but reasonable differences of opinion exist as to the inferences to be drawn from the language in the deed and summary judgment was not appropriate. The ambiguities in the deed create a question of fact to be determined with the aid of extrinsic evidence. We conclude the district court erred in granting summary judgment. We reverse the district court's decision on the Faro deed and remand for a trial only on that deed. On remand, the court may consider extrinsic evidence to clarify the parties' intentions. If no further evidence can be produced that was not already before the court, the parties may provide a stipulation of facts and exhibits, together with any argument permitted, for trial based on the record submitted. *See Golden v. SM Energy Co.*, 2013 ND 17, ¶ 18, 826 N.W.2d 610.

## IV

[¶ 46] We conclude the Grant, Olson, Blatt, Kline, Trana, and Larson deeds are unambiguous and conveyed a fee simple title to the railroad. We conclude the Faro deed is ambiguous, but summary judgment was not appropriate. We reverse the summary judgment in favor of the EOG parties with respect to the deeds, and we remand for further proceedings on the Faro deed and for entry of judgment in favor of Soo Line and G–4 for the property covered by the Grant, Olson, Blatt, Kline, Trana, and Larson deeds.

[¶ 47] ZANE ANDERSON, D.J. and DANIEL J. CROTHERS J., concur.

[¶ 48] The Honorable ZANE ANDERSON, D.J., sitting in place of KAPSNER, J., disqualified.

VANDE WALLE, Chief Justice, concurring and dissenting.

[¶ 49] I concur in part III D of the majority opinion. I dissent to part III A and B.

[¶ 50] The majority opinion concludes that except for the Faro deed, the deeds are unambiguous and reverses the trial court's summary judgment for the EOG parties and orders summary judgment for Soo Line and G–4 parties. The dissent appears to conclude the deeds are ambiguous based on the facts cited in the dissenting opinion. I agree with the majority that the Faro deed is ambiguous and summary judgment for EOG on that deed should be reversed. I disagree with the majority that the other deeds are unambiguous. The dissent also disagrees and relies on facts outside of the deeds.

[¶ 51] Justice Sand, writing for the Court, stated that "[a]n ambiguity exists when good arguments can be made for either of several contrary positions as to the meaning of a term." *Kruger v. Soreide*, 246 N.W.2d 764, 768 (N.D.1976). I believe both the majority and dissent make good arguments for the construction of the deeds in question. Therefore I conclude they are ambiguous and that summary judgment for any of the parties was improper. I would reverse and remand for trial. On remand, the trial court would be able to consider the facts and analysis of both the majority and dissenting opinions as well as any other admissible facts the parties may offer into evidence.

[¶ 52] GERALD W. VANDE WALLE, C.J.

SANDSTROM, Justice, dissenting.

[¶ 53] I respectfully dissent.

[¶ 54] A hundred years ago, when the railroad sought the legal right to cross their land in Mountrail County, some landowners gave deeds to the railroad in lieu of condemnation. We are asked to decide whether the railroad actually took greater property rights from those landowners than it took from condemnation or from the federal government deeds. For its rights-of-way from condemnation and from the federal government, the railroad received only an easement. There is compelling law and fact on which to conclude the railroad took through those deeds from private landowners only what it would have received from condemnation, that is, easements.

[¶ 55] Early in the twentieth century, the Minneapolis, St. Paul & Sault Ste. Marie Railway Company, the predecessor to the Soo Line Railroad Company, sought continuous right-of-way across Mountrail County to construct and operate its rail line. It obtained that right-of-way in part under the 1899 Act of Congress, in part by condemnation, and in part by deeds from private landowners. The various segments of right-of-way under deeds from private landowners were interspersed with right-of-way secured under the 1899 Act and by condemnation. If the private landowners had not conveyed the right-of-way by deed, the railroad had the authority to take the right-of-way by eminent domain ("condemnation").

[¶ 56] I note the majority agrees that through condemnation and from the federal government, the railroad received only easements.

[¶ 57] In analyzing most of the deeds from private landowners, the majority focuses on the pre-printed "boilerplate" language of the deeds, and omits and ignores the crucial typewritten language. See the majority opinion, at ¶ 22, where it omits the typewritten provisions and replaces them with "[property description]." The typewritten provisions prevail over the pre-printed language, and any handwritten

language would prevail over both. See N.D.C.C. § 9–07–16. The typewritten language in the deeds, the main portion of which is omitted in the majority's analysis, supports the logical conclusion that the deeds from private landowners conveyed to the railroad only what it would have taken through condemnation.

[¶ 58] Here is the typewritten language from the Olson deed, which parallels language of the other deeds:

—*All that part* of the South half of Southwest quarter (S½ of SW¼) of Section Twenty-seven (27), in Township One hundred fifty-two (152) North of Range Ninety (90) West, which lies Southerly of a line that is Northerly of, parallel with and one hundred twenty-five (125) feet distant *from the center line of the main track* of said Railway Company's railroad *as the same is now located over and across* Sections Twenty-seven (27) and Thirty-four (34), in said Township and Range. The land hereby conveyed containing eight and sixty-five (8.65) hundredths Acres, more or less, being a part of the land selected by and now occupied by the first party, by virtue of the Homestead laws of the United States under Homestead entry No. 09385, made at the Minot Land Office, on October 29, 1912.—

—And for the consideration aforesaid, said party of the first part, for himself, his heirs, successors and assigns, does hereby release and discharge said party of the second part, its successors and assigns of and from all and every obligation now existing or hereafter arising to locate, establish, maintain or permit any crossing, *over, upon, under or across its tracks, right of way* or other land for the use or benefit of the owners or occupants of the lands and premises now owned by the party of the first part

adjoining the second party's said railroad.

(Emphasis added.)

[¶ 59] The deed language reflects an intent not to convey all, but to convey "all of that part," and talks of the "railroad as the same is now located over and across" the land. I believe this language is reflective of an easement. The second typewritten paragraph recited above is also inconsistent with conveyance of the entire fee ownership in that the paragraph would not have been necessary had the railroad been taking more than an easement. The deeds from the private landowners also carry the label "Right of Way" in their titles.

[¶ 60] While the majority may point to boilerplate and other language to argue the railroad took more than an easement, ambiguity would properly be resolved against the railroad which drew the language. See N.D.C.C. § 9–07–19.

[¶ 61] Ambiguity takes us beyond the four corners of the deeds to the context of the deeds and suggests that the deeds from the private landowners conveyed to the railroad only what the railroad would have taken by condemnation—an easement—and that the mineral interests in dispute here properly belong not to the railroad but to the heirs and successors of the homesteaders of a hundred years ago.

[¶ 62] In *Lalim v. Williams Cnty.*, 105 N.W.2d 339, 341 syll. 7 (N.D.1960), this Court held:

A deed must be interpreted to further the intention of the parties and in determining that intention the court may consider the subject matter, the object to be obtained, and the circumstances and conditions existing at the time the deed was executed.

[¶ 63] Here the purpose was undisputably to provide right-of-way for the rail-

road. This Court further held in *Lalim*, 105 N.W.2d at 341 syll. 10:

> In determining the intent of the parties to a deed, the grantee of which possesses the power to acquire the property granted by eminent domain for public use and it appears that the property is being obtained for such use, the limitations of the estate which the grantee may acquire by eminent domain may be considered in determining the intent of the parties.

[¶ 64] In *Lalim*, this Court held that when a party which possesses the power to take by eminent domain obtains a property interest by private deed, "the limitations of the estate which the grantee may acquire by eminent domain may be considered in determining the intent of the parties." *Lalim*, 105 N.W.2d at 341 syll. 10. And the Court held the deed to an entity that could take by condemnation conveyed only an easement. *Lalim*, at 347.

[¶ 65] As Professor James E. Leahy in his treatise on our North Dakota Constitution makes clear, the railroad had the authority to take by eminent domain (condemnation). James E. Leahy, *The North Dakota State Constitution* 50 (2003). *See Gram Const. Co. v. Minneapolis, St. P. & S. S. M. Ry. Co.*, 36 N.D. 164, 161 N.W. 732, 734 (1916).

[¶ 66] Here, again, it is undisputed that by condemnation the railroad could have taken only an easement. The *Lalim* precedent says that the railroad received only an easement here.

[¶ 67] The majority argues, at ¶ 5, "The parties did not argue these deeds were involuntary and there is no evidence in the record indicating the deeds were made in lieu of condemnation." While *Lalim* would say that where the taking entity has the authority to take by condemnation this does not matter, it seems absurd to argue that if the private land-

owners had not executed the right-of-way deeds, the railroad would not have used condemnation. Without the right-of-way over the private landowners' property, the record clearly shows that the rail line in question would have consisted of unconnected segments of track.

[¶ 68] Although a strong argument can be made for the district court's analysis ruling as a matter of law for the heirs and successors of the homesteaders, I would conclude that the boilerplate language of the deeds relied on by the majority and the crucial typewritten language of the deeds omitted by the majority, as well as the legal authority of the railroad to take by condemnation and the historical context, create a question of fact to be resolved by trial.

[¶ 69] DALE V. SANDSTROM.